786 F.2d 550
 40 Fair Empl.Prac.Cas. 639,
39 Empl. Prac. Dec. P 35,983,
Unempl.Ins.Rep. CCH 21,789
Clarence C. HILL, Plaintiff-Appellee,
v.
The COCA COLA BOTTLING COMPANY OF NEW YORK and John Hurley,
Defendants-Appellants.
 No. 136, Docket 85-7405.
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 23, 1985.
Decided March 21, 1986.
 
 Stephen D. Hoffman, New York City (Warshavsky, Hoffman & Cohen, P.C., Madelyn C. Littman, of counsel), for defendants-appellants.
 Eleanor Jackson Piel, New York City, for plaintiff-appellee.
 Before MANSFIELD, PIERCE and PRATT, Circuit Judges.
 GEORGE C. PRATT, Circuit Judge:
 
 
 1
 Defendants, the Coca Cola Bottling Company of New York (Coke-New York) and John Hurley, moved for summary judgment, contending that plaintiff Hill's claim of racial discrimination in employment was collaterally estopped by prior judicially confirmed holdings of New York's unemployment insurance tribunals that Hill had been terminated for misconduct. The United States District Court for the Eastern District of New York, Jack B. Weinstein, Chief Judge, denied defendants' motion, but certified the question for appeal pursuant to 28 U.S.C. Sec. 1292(b). We have permitted the appeal and now affirm the district court's order.
 
 BACKGROUND
 
 2
 At the time he left his employment with Coke-New York, Clarence Hill, a black man, was a divisional manager at the Bronx branch. Among his responsibilities as manager, Hill was charged with approving and recording business gifts and donations made by Coke-New York's Bronx-branch salesmen in the course of their dealings with customers. These business gifts and donations consisted of free soda and other valuable items, such as tickets to theatrical and sports events, given either as incentives to do business with Coke or as charitable contributions. In whatever form a gift or donation was made, Coke-New York's managers were responsible for recording the transaction on a "sampling ticket", which constituted Coke-New York's only record of the transaction.
 
 
 3
 On October 24, 1980, Hill was confronted by John Hurley, vice president of Coke-New York in charge of the Bronx branch. Hurley asked Hill to explain a number of sampling tickets bearing Hill's name that purported to represent donations of soda to the Honeywell Baptist Church. Earlier that day Hurley had spoken to the people in charge of the church, who had informed him that they had never received the free cases of Coke indicated on the sampling tickets approved by Hill.
 
 
 4
 Before responding, Hill asked for and was given time to examine his records, but ultimately he could provide no explanation for the reported church transactions. Hurley offered Hill the option of resigning or being discharged and, after taking time to make a phone call, Hill signed a resignation form. Later the same day another employee, Irving DuPass, whose name also appeared on a number of sampling tickets for the Honeywell Baptist Church, declined a similar option to resign and was therefore fired.
 
 
 5
 Hill protested through three vehicles: (1) he filed for unemployment insurance benefits; (2) he filed a complaint with the New York State Division of Human Rights, in which he alleged that the action taken against him was discriminatory because he was merely following a long-standing company policy for which white employees were not fired; and (3) he later sued in federal court under 42 U.S.C. Secs. 1981, 1983 and Title VII.
 
 
 6
 Hill's application for unemployment insurance benefits was denied by a local office of the New York State Department of Labor on November 21, 1980, on the ground that he had violated company policy with respect to the sampling tickets. Hill requested and received a hearing before an administrative law judge (ALJ) of the state labor department to reconsider the local office's decision denying him benefits. The ALJ rejected Hill's contention that it was common practice to send extra samples to stores for promotional purposes and to account for them by charging them off with sampling tickets made out to nonprofit organizations, and, finding that all personnel had been made aware of Coke-New York's policy requiring that free samples be accurately reported, the ALJ affirmed the initial denial of benefits.
 
 
 7
 The ALJ's decision was ultimately appealed to the Unemployment Insurance Appeal Board of the New York State Department of Labor. Following a hearing at which fifteen witnesses testified and were cross-examined, the board affirmed, holding that both Hill and DuPass had knowingly violated Coke-New York's sampling ticket policy and that the misconduct determinations were, therefore, proper.
 
 
 8
 In an Article 78 proceeding to review the board's decision, the appellate division, third department, basing its decision on the extensive hearings had before the appeal board, affirmed the board's determination on the ground that the evidence reasonably supported "the board's resolution of alternative factual versions and the credibility of witnesses". Hill's motions for leave to appeal to the New York Court of Appeals were denied.
 
 
 9
 In the meantime Hill had commenced his present action in the United States District Court for the Eastern District of New York, in which he alleged that Coke-New York and Hurley had violated his rights under the fourteenth amendment and 42 U.S.C. Secs. 1981, 1983, and that Hurley had committed a willful and intentional tort against him. Later, having received his right-to-sue letter from the EEOC, and having been granted leave to file an amended complaint, Hill added a Title VII cause of action for racial discrimination in employment under 42 U.S.C. Sec. 2000e et seq.
 
 
 10
 Coke-New York sought to have Hill's earlier application before the state division of human rights dismissed on the ground of administrative convenience due to the pendency of the similar claims in this federal action. The commissioner of human rights denied the application and ordered a hearing; however, Hill eventually withdrew his complaint in that proceeding.
 
 
 11
 In the district court defendants ultimately moved for summary judgment on the ground that Hill's claims were collaterally estopped by the state unemployment insurance proceeding. Chief Judge Weinstein denied defendants' motion but certified the question, pursuant to 28 U.S.C. Sec. 1292(b), whether the state unemployment insurance determination that Hill had been terminated for misconduct collaterally estopped his present discrimination claim in federal court. We permitted defendants' appeal and now affirm, although for reasons different from those expressed in the oral decision below.
 
 DISCUSSION
 
 12
 Defendants assert that the district court erred in denying their motion for summary judgment because Hill is improperly seeking to relitigate his unsuccessful state claims in the district court. Generally speaking, the judicial proceedings of New York must be afforded the same full faith and credit in the federal courts as they would receive in the courts of New York. See 28 U.S.C. Sec. 1738 (1982); see also Migra v. Warren City School District Board of Education, 465 U.S. 75, 80, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984) (in Sec. 1983 action res judicata applied based on prior state court adjudication). Both section 1983 actions and employment discrimination claims under Title VII are subject to the strictures of this full faith and credit requirement for prior state judicial proceedings. See Allen v. McCurry, 449 U.S. 90, 103-04, 101 S.Ct. 411, 419-20, 66 L.Ed.2d 308 (1980) (in Sec. 1983 action collateral estoppel applied based on prior criminal conviction); Kremer v. Chemical Construction Corp., 456 U.S. 461, 476, 102 S.Ct. 1883, 1894, 72 L.Ed.2d 262 (1982) (in Title VII action collateral estoppel applied based on prior administrative decision affirmed in a review proceeding under Article 78 of New York's Civil Practice Law and Rules). Since Hill's administrative proceeding before the state labor department was judicially confirmed in the Article 78 proceeding, we are required by Kremer to apply New York's law on collateral estoppel.
 
 
 13
 Two questions control whether New York will apply the doctrine of collateral estoppel. First, is the issue to be decided in the second action identical to an issue necessarily decided in the earlier proceeding? Second, did the party against whom collateral estoppel is asserted have a full and fair opportunity to litigate the issue in that earlier proceeding? See Ryan v. New York Telephone Co., 62 N.Y.2d 494, 500-01, 478 N.Y.S.2d 823, 826-27, 467 N.E.2d 487, 490-91 (1984); Schwartz v. Public Administrator, 24 N.Y.2d 65, 71, 298 N.Y.S.2d 955, 960, 246 N.E.2d 725, 729 (1969). Since we conclude that Hill did not have a full and fair opportunity to litigate his discrimination claim in the earlier state proceeding, making it unnecessary to address the identity-of-issues question, we agree with the district court that Hill is not collaterally estopped from raising his discrimination claim in this action. He is, however, collaterally estopped from relitigating his violation of company policy, which must be accepted as established for the purposes of the present action. Ryan, 62 N.Y.2d at 501, 478 N.Y.S.2d at 827, 467 N.E.2d at 491.
 
 
 14
 In denying defendants' motion for summary judgment in the present case, the district court accepted Hill's contention that a finding of termination for just cause does not necessarily negate a subsequent finding of discrimination. We agree. Title VII forbids an employer from discriminating against his employees based on their race, "irrespective of the form taken by the discriminatory practice". Connecticut v. Teal, 457 U.S. 440, 455, 102 S.Ct. 2525, 2535, 73 L.Ed.2d 130 (1982). "[W]hile crime or other misconduct may be a legitimate basis for discharge, it is hardly one for racial discrimination." McDonald v. Santa Fe Trail Transportation Co., 427 U.S. 273, 283, 96 S.Ct. 2574, 2580, 49 L.Ed.2d 493 (1976). Accordingly, the Supreme Court has held that white employees dismissed for "misappropriating" company property stated a Title VII claim when they alleged black employees guilty of the same infraction were not dismissed. Id.
 
 
 15
 Hill claims that he was denied a full and fair opportunity to litigate the issues of whether he engaged in misconduct and whether he was forced to resign for such misconduct on the basis of what he claims is newly discovered evidence of perjury. We disagree with this aspect of his contention. Ordinarily, such "availability of new evidence", Ryan, 62 N.Y.2d at 501, 478 N.Y.S.2d at 826-27, 467 N.E.2d at 490-91, if material, could substantiate a finding that appellant lacked a full and fair opportunity to litigate those issues. However, Hill unsuccessfully sought in state court to reopen proceedings there on the same basis. Further, Hill seeks to introduce testimony that company policy permitted sampling ticket abuse before 1977. This purported new evidence, even if true, does not negate the essential finding in the state court that company policy did not permit sampling ticket abuse during the years as to which Hill admitted to such abuse.
 
 
 16
 We do agree, however, with Hill's basic contention that he did not receive before the unemployment insurance board a full and fair opportunity to litigate the racial discrimination issue, as that concept is viewed in New York. In Board of Education v. New York State Human Rights Appeal Board, 106 App.Div.2d 364, 482 N.Y.S.2d 495 (2d Dep't 1984), a case that controls Hill's situation, the unemployment insurance appeal board had held that a former employee had been terminated for misconduct and, therefore, was not entitled to benefits. The employee brought a subsequent complaint before the human rights division, which found that the employer had discriminated against the employee by provoking her termination because of her race. The human rights appeal board affirmed, and the employer appealed to the appellate division, asserting, as does Coke-New York here, that the finding by the unemployment insurance appeal board that the employee had been terminated for misconduct should have precluded the employee's claim of racial discrimination.
 
 
 17
 The appellate division rejected the employer's preclusion claim because the employee did not have a full and fair opportunity to litigate her discrimination claim in the unemployment insurance proceeding. First, it noted that the employee's racial claims were only "briefly explored" in the unemployment insurance proceeding. 106 App.Div.2d at 366, 482 N.Y.S.2d at 497. Similarly here, at the extensive hearing before the unemployment insurance appeal board, Hill's claim of race discrimination was barely mentioned. Defendants argue that Hill's discrimination claim was technically submitted to the appeal board when Hill's counsel incorporated into the board's record copies of papers previously filed with the human rights division, in which Hill claimed that he had been terminated because he is black. Nevertheless, the record reveals no significant exploration of this matter before the appeal board, and significantly, no mention of racial discrimination is made in any of the decisions of the four tribunals that considered Hill's unemployment insurance application.
 
 
 18
 Moreover, as the Board of Education court pointed out, New York has a separate agency for hearing discrimination complaints, and that court concluded:
 
 
 19
 An additional factor working against the application of collateral estoppel is the fact that the New York State Division of Human Rights has jurisdiction over discrimination complaints * * * and complainant could not have foreseen, under the facts present here, that an application for unemployment benefits would bar a subsequent antidiscrimination complaint.
 
 
 20
 Id. (Citation omitted). Hill's position here is arguably even stronger in that he did not wait until he had lost his unemployment insurance proceeding before filing his discrimination claim. Indeed, he properly observed this bifurcation of New York's agencies by separately filing virtually simultaneous claims for unemployment insurance and for relief from racial discrimination. It would be unfair to penalize Hill, through the doctrines of res judicata and collateral estoppel, for employing authorized state procedures, particularly when the litigated issue in the unemployment insurance proceeding barely touched on the discrimination claim.
 
 
 21
 Given the brief treatment of Hill's discrimination claim before the unemployment insurance appeal board, an administrative structure in New York that encourages separate consideration of unemployment insurance and discrimination claims, and the controlling authority of Board of Education v. New York State Human Rights Appeal Board, supra, we hold that Hill is not precluded from pursuing his discrimination claim in the district court because he did not have a full and fair opportunity to litigate that claim before the state's unemployment insurance agency.
 
 
 22
 Affirmed.