Delores BRESNAHAN,
Plaintiff-Respondent-Appellant,

v.

The MAY DEPARTMENT STORES
CO.,
Defendant-Appellant-Respondent.

No. 68688.

Supreme Court of Missouri,
En Banc.

March 17, 1987.

David M. Heimos, St. Louis, for plaintiff-respondent-appellant.

Henry D. Menghini, Gerre S. Langton, St. Louis, for defendant-appellant-respondent.

BILLINGS, Judge.

The Court granted transfer of this case after the Missouri Court of Appeals, Eastern District, ruled that collateral estoppel barred plaintiff's claims against her former employer because a key fact issue had been ruled adversely to plaintiff in an administrative proceeding.

The trial court entered judgment against plaintiff on her claim for punitive damages but let stand the jury's award of actual damages in her favor. Both parties appealed. The court of appeals reversed the actual damage award on the collateral estoppel ground and noted the punitive damage issue was without merit and the trial court correctly set aside that award.

The Court agrees with the opinion authored by the Honorable Douglas W. Greene, Special Judge, for the court of appeals. Without quotation marks and with minor modifications, that opinion follows:

Plaintiff Bresnahan, an employee of the Famous-Barr South County store in St. Louis County, was discharged on May 6, 1983, for violation of company work rules. Famous-Barr is a division of the May Department Stores Company.

The incident which led to the discharge occurred on April 22, 1983. Plaintiff ar-

rived for work that morning, prior to the store opening for business, and was observed by the store security manager looking through greeting cards. Shopping before store hours was against the store policy. A security guard was alerted and plaintiff was placed under surveillance. She walked to the toy department, picked up a stuffed toy monkey, and without paying for it, or obtaining proper authorization for removing it from that department, took the toy, placed it in a Famous-Barr sack and placed it in a "lockup" in her department. When her work day was over, plaintiff picked up the sack containing the toy and was leaving the store when she was intercepted by the security manager. Plaintiff twice refused to let the security manager look into the sack, and then said, "I did not leave the building with it. You can't get someone for stealing if they don't leave the building first." She then contended that she had made a mistake, and that she thought the sack contained her work shoes. Plaintiff was detained while a search was made of the three lockups in the department and office area where she worked. Her work shoes were not found.

Famous-Barr had work rules for its employees, among which was rule .15C which provided that "[a]ny attempt to remove Famous-Barr property/equipment from the premises without proper documentation or authorization is grounds for immediate dismissal." After a thorough investigation of the incident, during which it was found that plaintiff had violated additional work rules such as holding the monkey for a future exchange or, if regarded as a purchase, failed to have the purchase sealed, marked, and verified by a sales clerk, plaintiff was fired.

Plaintiff then made a claim for unemployment insurance benefits with the Division of Employment Security, pursuant to Chapter 288, RSMo 1978, as amended, seeking unemployment benefits. Based on the evidence of the incident, a deputy of the Division of Employment Security made the determination that plaintiff was not qualified for benefits because she had been discharged for misconduct connected with her work. The reason given for this determination was that:

The claimant was discharged because she was observed by security leaving the store with a stuffed animal, valued at less than $10.00, she had not paid for. Claimant's actions constitute aggravated misconduct and wage credits reported by this employer from 1/1/82 through 4/22/83 are cancelled.

Plaintiff filed a notice of appeal with the Appeals Tribunal of the Division of Employment Security. After a hearing at which witnesses testified for the employer and employee, the appeals referee affirmed the deputy's decision based on the following findings:

On April 22, 1983, before the employer had opened its store and even before it had turned on its lights, the claimant was observed by an employer security manager looking at merchandise outside of her department. The claimant was observed taking a stuffed animal from the employer's toy department. The claimant was seen putting this item in a bag. The employer's security manager set up a surveillance on the claimant for the rest of the day. When the claimant left work, the employer's security manager did a security check of the claimant's possessions. The claimant willingly gave up two packages in which she was carrying bona fide purchases. The claimant, however, refused to give the employer's security manager a third package. In this third package was found a stuffed animal valued at approximately $10.00. The claimant at first indicated that she had taken a wrong package and that she had meant to take home an old pair of shoes. Once the claimant had been detained, she informed the security manager that she, the security manager, could not do anything about the claimant's actions because she had not actually left the store. Because the claimant had tried to take merchandise from the employer without purchasing it, the claimant was discharged on April 22, 1983.

The Missouri Employment Security Law provides that a claimant shall be disqualified for waiting week credit or

benefits for not less than one nor more than sixteen weeks for which he claims benefits and is otherwise eligible if it is found that he has been discharged for misconduct connected with his work. In addition to the disqualification for benefits under this provision the Division may in the more aggravated cases of misconduct cancel all or any part of the individual's wage credits, which were established through his employment by the employer who discharged him, according to the seriousness of the misconduct.

The claimant was discharged on April 22, 1983. The claimant was discharged because she attempted to take merchandise from the employer without proper payment. It is believed that the claimant did steal from the employer. The claimant's actions in stealing from the employer violates the fiduciary duty which the claimant owes to her employer. The claimant was entrusted with the employer's merchandise and money. The claimant's actions in stealing from the employer not only constitute misconduct but misconduct of the most aggravated nature. Accordingly, I find the claimant was discharged on April 22, 1983, for aggravated misconduct connected with her work.

Plaintiff's attorney then filed an application for review by the Labor and Industrial Relations Commission. The Commission adopted the findings of fact of the Appeals Tribunal, determined that those findings were supported by competent and substantial evidence, and determined that the decision of the Appeals Tribunal denying benefits was made in accordance with the law. This decision was properly communicated to plaintiff. She did not avail herself of the right to seek judicial review of the commission's decision, as authorized by § 288.210, RSMo 1986.

Plaintiff then filed a multi-count damage suit against May Department Stores Co., the parent company of Famous-Barr, and several of its employees. She alleged breach of an implied contract of employment, false imprisonment, libel, and other civil wrongs. Some of the counts were dismissed by the trial court prior to, or during trial, for failure to state a claim, or for failure of proof. After trial, a jury returned a verdict for plaintiff and against May Department Stores on the implied contract count and assessed her actual damages at $116,000 and punitive damages at $10,000. After hearing after trial motions, the trial court set aside the punitive damage award, but affirmed the judgment for actual damages. Both parties appealed, and the cases have been consolidated here.

The record indicates that May Department Stores timely raised the affirmative defense of collateral estoppel, and reasserted that defense at every relevant trial and after trial stage, including their motion for judgment notwithstanding the verdict. Whether an employee's claim for damages is barred by collateral estoppel is a question of law. The trial court ruled that plaintiff's claim was not barred for that reason, which ruling is one of the employer's claims on appeal of trial court error. The issue is dispositive.

■ As was ably stated in *State ex rel. O'Blennis v. Adolf,* 691 S.W.2d 498, 501 (Mo.App.1985), collateral estoppel deals with issue preclusion. This means that when a fact is appropriately determined in one legal proceeding, it is given effect in another lawsuit in cases where such fact or facts are a vital part of the evidentiary chain necessary to be established in order to prove a cause of action. In *Oates v. Safeco Ins. Co. of America,* 583 S.W.2d 713, 719 (Mo. banc 1979), it was emphasized that the purpose of the doctrine was to prevent the same parties from relitigating issues which had been previously litigated with adverse results. *See Hudson v. Carr,* 668 S.W.2d 68, 70 (Mo. banc 1984).

The doctrine has been applied by Missouri courts in situations where the fact issue was raised and decided in an administrative proceeding and relitigation later attempted in a circuit court action. In *Hines v. Continental Baking Co.,* 334 S.W.2d 140, 144–46 (Mo.App.1960), the court held that an unappealed final award of the then named Industrial Commission in a workmen's compensation case which held that an employee

did not sustain an accidential injury arising out of or in the course of his employment was a bar to his asserting it in any other proceeding in the future that he did, and that such adjudication of the Commission upon a fact issue "as effective and impregnable to collateral attack as a judgment of a court." Twenty-two years later, in *Butcher v. Ramsey Corp.*, 628 S.W.2d 912, 914 (Mo.App.1982), the court of appeals under a similar factual and legal situation present in *Hines* specifically held "the unappealed final administrative determination in a workmen's compensation proceeding upon a fact issue within the jurisdiction of the administrative body is not subject to collateral attack and constitutes a bar to relitigation of the same fact issue in a subsequent common law action."

■ Since plaintiff sought to litigate a disputed fact issue (did she attempt to remove her employer's property from the store premises without paying for it and, in so doing, did she violate the company work rules, which conduct justified immediate dismissal?) before an administrative tribunal (The Labor and Industrial Commission), and did not appeal its decision, the reasoning of *Hines* and *Butcher* applies, and she may not relitigate the issues raised and decided adversely to her in the administrative proceeding, if those proceedings met the four-pronged test set out in *Oates v. Safeco Ins. Co. of America*, 583 S.W.2d at 719:

> The court in reviewing whether the application of collateral estoppel is appropriate should consider: (1) whether the issue decided in the proper adjudication was *identical* with the issue presented in the present action; (2) whether the prior adjudication resulted in a judgment on the merits; and (3) whether the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication. *LaRose v. Casey*, [570 S.W.2d 746, 749 (Mo.App. 1978); *Bernhard v. Bank of America Nat. Trust & Sav. Ass'n.*, 19 Cal.2d 807, 122 P.2d 892, 895 (1942)]. Most courts have added a fourth factor to the three enunciated by Chief Justice Traynor in

the *Bernhard* case: whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit. [Cunningham, *Collateral Estoppel: The Changing Role of the Rule of Mutuality*, 41 Mo.L.Rev. 521, 529 (Fall 1976)]; *860 Executive Towers, Inc. v. Board of Assessors*, 53 A.D.2d 463, 385 N.Y.S.2d 604, 612 (1976); *Johnson v. United States*, 576 F.2d 606, 614 (5th Cir.1978). Fairness is the overriding consideration in determining whether or not to apply the Doctrine of Mutuality. *Johnson*, at 614; *Freeman v. Marine Midland Bank-New York*, 419 F.Supp. 440, 448–49 (E.D.N.Y.1976); *Read v. Sacco*, 49 A.D.2d 471, 375 N.Y.S.2d 371, 375 (1975).

Here, the issue to be decided in the administrative proceeding was identical with that presented in the present action. The prior adjudication by the Labor and Industrial Relations Commission, when not appealed, resulted in a final and conclusive determination of the fact issue. The party against whom collateral estoppel is now asserted was a party to the administrative decision, and she had a full and fair opportunity to litigate the fact issue in the administrative proceeding. This being so, she was barred from relitigating the fact issue of whether she was attempting to remove the stuffed toy monkey from the store premises without proper documentation or authorization in a subsequent breach of contract proceeding.

The trial court erred in failing to grant defendant's motion for judgment notwithstanding the verdict. The judgment of the circuit court is reversed, and the cause remanded with directions to enter judgment for defendant (May Department Stores) on Count I of plaintiff's first amended petition.

In view of our disposition noted above, plaintiff's appeal on the punitive damage issue has no merit, and the trial court's action in setting aside such judgment is affirmed.

HIGGINS, C.J., and DONNELLY and WELLIVER, JJ., concur.

RENDLEN, J., concurs in result.

BLACKMAR, J., dissents in separate opinion filed.

ROBERTSON, J., dissents and concurs in separate dissenting opinion of BLACKMAR, J.

BLACKMAR, Judge, dissenting.

The Court seriously errs when it denies the plaintiff a jury trial of her claim for breach of employment contract, on the basis of a decision of the Division of Employment Security. The error consists in the failure to consider the purpose of the administrative proceedings and the nature of the hearing before the appeals tribunal.

Because of the posture of the case as it comes to us, I give no consideration to the other points raised by the appellant May Department Store in arguing for reversal. The court of appeals ceased further inquiry after determining that collateral estoppel applies, and so I write only on the point they reached.

Collateral estoppel properly applied is a salutary doctrine, designed to reduce the volume of litigation and to settle controversies. *Hudson v. Carr*, 668 S.W.2d 68 (Mo. banc 1984). The doctrine, nevertheless, must be carefully confined so that litigants are not unduly impeded in the pursuit of their rights. There is a need for special care when, as a consequence of applying collateral estoppel, a party is deprived of a jury trial.

Our requirements for applying the doctrine are set out in *Oates v. Safeco Ins. Co.*, 583 S.W.2d 713, 719 (Mo. banc 1979). The principal opinion seeks to apply the rule of that case, but does so mechanically and uncritically, giving no attention to the nature of the proceedings set up in bar in this case. The court ignores the "fourth factor," of that opinion by making no inquiry as to

> Whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit.

*Oates* listed this fourth factor as one applied by "most courts." *Id.* at 719.

Our opinion in *Bank Bldg. & Equipment Corp. v. Director of Revenue*, 687 S.W.2d 168 (Mo. banc 1985) leaves no doubt that this fourth factor is a part of the law of Missouri. In *Bank Bldg.*, we looked at the nature of hearings before the State Tax Commission, at a time when it had a much broader jurisdiction and handled many proceedings which are now within the province of the Administrative Hearing Commission. We concluded that the decision of that Commission as to one year's taxes did not operate as an estoppel in subsequent proceedings, even though the identical issue was presented. We gave weight to the informal nature of the Tax Commission's proceedings and to the fact that the Commissioners were not necessarily legally trained. The teaching of *Bank Bldg.* is that, in determining whether to give collateral estoppel effect to an administrative agency's ruling in a subsequent judicial proceeding, the nature of the prior proceedings must be considered. *See also State Farm Fire & Casualty Co. v. Emde*, 706 S.W.2d 543 (Mo.App.1986) (small claims judgment not given preclusive effect because informal and summary procedures did not ensure a full and fair opportunity to litigate liability).

In accordance with this view, the Restatement (Second) of Judgments § 28 (1982) provides several exceptions to the general rule of issue preclusion. If there are "differences in the quality or extensiveness of the procedures followed in the two courts" relitigation of an issue previously determined is not precluded in a subsequent action between the parties. Restatement (Second) of Judgments § 28(3) (1982). Comment (d) to § 28 elaborates on this exception, as follows:

> There may be compelling reasons why preclusion should not apply. For example, the procedures available in the first court may have been tailored to the prompt, inexpensive determination of small claims and thus may be wholly inappropriate to the determination of the same issues when presented in the context of a much larger claim.... The question in each case should be resolved

in the light of the nature of litigation in the courts involved and the legislative purposes in allocating jurisdiction among the courts of the state.

*Emde*, 706 S.W.2d at 546.

The principal opinion gives no consideration at all to the nature of the procedure for making an unemployment compensation claim. It simply embodies the opinion of the court of appeals, without even discussing the circumstances which caused this Court to grant transfer. In what I have to say, I express no criticism of the diligent efforts of the employees of the Division of Employment Security, and particularly the Appeals Referees. They do their jobs well, in compliance with the governing purpose of the law they administer. They do not, however, sit to adjudicate rights outside their narrow sphere.

The Employment Security Law is designed to mitigate the effects of unemployment on individuals who are displaced through no fault of their own, by providing them with a minimal allowance until they have had time to look for other employment. *Missouri Div. of Employment Secur. v. Labor & Industrial Rel. Com.*, 651 S.W.2d 145 (Mo. banc 1983); Section 288.020, RSMo 1986. The benefits are funded by a surtax on employers, and the employer is an interested party because charges are based on employment experiences. Sections 288.100–.120, RSMo 1986. Thus, an employer with a history of high rate of turnover and layoff bears a heavier burden.

Disputes arise as to coverage, and so provision is made for a hearing procedure at which the employee and the employer may present their points on eligibility. Section 288.190, RSMo 1986. Because of the need for a prompt adjudication of eligibility, the policy of the law is that these proceedings be expedited. The purpose of the statute is defeated if an eligible employee does not receive regular payments. A lump sum at the end of litigation is highly inappropriate.

The initial determination is by a Deputy of the Division of Employment Security, on the basis of statements of the parties. Section 288.070, RSMo 1986; 8 Mo. CSR 10–3.100.5. If the decision is in favor of eligibility benefits begin immediately, subject to the employer's right of appeal. Section 288.070.4, RSMo 1986. If the decision is against eligibility the employee may appeal. Section 288.070.4.

The appeal is before an Appeals Tribunal, usually consisting of a single Appeals Referee. Section 288.190, RSMo 1986. This is the only hearing at which evidence is presented. Following this hearing, the Referee renders a written decision. Section 288.190.3, RSMo 1986. If compensation is being paid and the award goes against the employee, it is stopped; if the decision of the deputy has been unfavorable, a favorable decision by the Referee institutes payment. Section 288.070.5, RSMo 1986. Unless the state labor and industrial relations commission decides upon review that additional evidence is necessary, all subsequent proceedings, administrative or judicial, simply consist of a review of the record made before the Referee. Section 288.200, RSMo 1986. In determining the issue of collateral estoppel, the nature of this hearing must be considered.

The governing statute makes it clear that the proceedings for employment benefit claims are not intended to have any effect in other kinds of proceedings. The statute reads as follows:

> Any right, fact or matter in issue, directly based upon or necessarily involved in a determination or redetermination which has become final, shall be conclusive with respect to the parties who had notice of such determination, redetermination, or decision *for all the purposes of the employment security law in any other proceeding* ... (Emphasis supplied).

Section 288.200.2, RSMo 1986.

The statutes and regulations which govern the hearings before Appeals Referees demonstrate numerous departures from the norms of hearing procedure, so that the decision should not be applied as a bar to judicial proceedings. In at least four important particulars, the proceedings are in-

adequate for the determination of other rights.

(1) There is no provision for prehearing discovery. We stressed the importance of discovery in *State ex rel. Noranda Aluminum, Inc. v. Rains,* 706 S.W.2d 861 (Mo. banc 1986). Yet it would defeat the purpose of the unemployment compensation proceedings if they were to be delayed while depositions are taken;

(2) The Appeals Referee is not obliged to follow common law rules of evidence. The technical rules of civil procedure do not apply, so the appeals tribunal can determine on a case-by-case basis the procedure it finds suitable. This too is a concession to the need for expedition. The governing provisions are as follows:

> The manner in which disputed determinations, referred claims, and petitions for reassessment shall be presented and the conduct of hearings shall be in accordance with regulations prescribed by the division for determining the rights of the parties, whether or not such regulations conform to common law or statutory rules of evidence and other technical rules of procedure....

Section 288.190.2, RSMo 1986.

> An appeals tribunal shall follow in each case that procedure which it believes will best develop all of the pertinent facts with respect to the issues without regard to common law or statutory rules of evidence or technical rules of procedure....

8 Mo. CSR 10–5.015.3.

(3) There is no statutory requirement that the Appeals Referee be a member of the bar, or have any particular experience.

(4) The parties often are not represented by counsel. It is not enough to say that counsel may appear. A litigant who appeared in a court of record without counsel would undoubtedly be encouraged to obtain representation. Before the Appeals Tribunal, *pro se* appearances are a matter of course.

Unemployment benefits, furthermore, are extremely modest in amount. This claimant had no idea that she was putting her lawsuit in jeopardy by making a claim.

If the result stands, claimants may be positively discouraged from claiming unemployment benefits, if they have potential civil litigation. It would defeat the purpose of the law if claims were discouraged.

What is sauce for the goose, moreover, is sauce for the gander. If decisions of the Division of Employment Security estop the employees, a decision in favor of benefits would likewise estop the employer. I can think of at least four potential civil actions which might be impacted by unemployment compensation proceedings, as follows:

(1) An employee requests a service letter. The employer responds, giving a reason. The Appeals Referee holds that that reason was not established. Does this holding conclude the employer if the employee sues under § 290.140, RSMo 1986?

(2) An employer discharges an employee for alleged theft and causes the employee to be arrested. The Appeals Referee finds that there was no theft. Is the employer estopped in defending a false imprisonment suit?

(3) An employer places the reason for discharge in writing. The Referee finds that these reasons are not established. May the employer prove the truth of the reasons assigned in defending a libel suit?

(4) The employer discharges an employee for alleged misconduct. The employee alleges that the discharge was for racial or sexual discrimination. The Referee sustains the employee's claim. Is the employer now set up for a discrimination suit?

The proceedings before the Appeals Referee are suitable to provide elemental due process in the speedy determination of the right to benefits. That is their only purpose. The principal opinion greatly enlarges this purpose.

My conclusion is in line with *State Farm Fire & Casualty Co. v. Emde, supra.* The reason is the same. A proceeding in small claims court has a limited purpose, a limited amount in controversy, and informal procedures. To enlarge the effect would discourage litigants from taking small claims there. By the same token, the enlargement of the effect might discourage

employees from making unemployment compensation claims, and might impede the employer in resisting claims.

Similarly, the Restatement (Second) of Judgments § 28(5)(c) (1982) carves another exception to the application of collateral estoppel if "the party sought to be precluded, as a result of ... special circumstances, did not have an adequate opportunity or incentive to obtain a full and fair adjudication in the initial action." This includes situations where "the amount in controversy in the first action may have been so small in relation to the amount in controversy in the second that preclusion would be plainly unfair." Restatement (Second) of Judgments § 28(5) comment j (1982).

This exception has been noted in a case denying collateral estoppel effect to a decision of an employment security tribunal. In *Ferris v. Hawkins*, 135 Ariz. 329, 660 P.2d 1256, 1260 (App.1983) the court held that a finding of misconduct in a claim for unemployment compensation would not preclude a determination of the propriety of a discharge in an appeal from the decision of the State Personnel Board upholding the termination. The court contrasted the small amount in controversy in the unemployment case ($1,530) with the significant amount in controversy in the personnel matter ($17,715.77 plus reinstatement). 660 P.2d at 1259. It explained that issue preclusion should not apply if the circumstances of the particular case demonstrate some overriding consideration of fairness. Because the rights and remedies in each action were markedly different, the litigant was allowed a full opportunity to present

his claims independently in each forum. 660 P.2d at 1260.

Other state cases holding that a proceeding to recover unemployment compensation benefits does not operate as collateral estoppel in subsequent litigation are as follows: *Salida School District v. Morrison*, 732 P.2d 1160, (Colo.1987); *Robinson v. Hewlett-Packard Corp.*, 183 Cal.App.3d 1108, 228 Cal.Rptr. 591 (1986); *Hahn v. Arbat Systems, Ltd.*, 200 N.J.Super. 266, 491 A.2d 58 (1985); *Kjos v. City of Sioux City*, 346 N.W.2d 25 (Iowa 1984).[1]

Cases taking a contrary position are found in New York,[2] Wyoming,[3] and in a case with another adequate basis, Indiana.[4] Two Ohio courts have reached opposite results.[5] The October 1986 issue of the Fordham Law Review expresses substantial criticism of the holding of the New York Court of Appeals in the *Ryan* case. See Carlisle, *Getting a Full Bite of the Apple: When Should the Doctrine of Issue Preclusion Make an Administrative or Arbitral Determination Binding in a Court Of Law?*, 55 Fordham L.Rev. 63, 69, 80 (1986).

Unemployment compensation proceedings are essentially similar in all states. A degree of uniformity is imposed by federal law, because the federal government supplies substantial funding. Although there are decisions going both ways, a respectable majority of the reported cases support the views I express.

The principal opinion cites workers' compensation cases in support of its holding.[6]

1. See also *Mack v. South Bay Beer Distributors, Inc.*, 798 F.2d 1279, 1283–84 (9th Cir.1986); *Hill v. Coca Cola Bottling Co.*, 786 F.2d 550 (2nd Cir.1986); *Moore v. Bonner*, 695 F.2d 799 (4th Cir.1982); *Lewis v. International Business Machines Corp.*, 393 F.Supp. 305 (1974).

2. *Ryan v. New York Telephone Co.*, 62 N.Y.2d 494, 478 N.Y.S.2d 823, 467 N.E.2d 487 (1984).

3. *Salt Creek Freightways v. Wyoming Fair Employment Practices Com.*, 598 P.2d 435 (Wyo. 1979).

4. *McClanahan v. Remington Freight Lines, Inc.*, 498 N.E.2d 1336 (Ind.App.1986); *but see Cox v.*

*Indiana Subcontractors Assoc.*, 441 N.E.2d 222 (Ind.App.1982).

5. *Distelzweig v. Hawkes Hospital of Mt. Carmel*, No. 86AP–640, slip op., Tenth Appellate District (December 30, 1986); *Pullar v. Upjohn Health Care Services, Inc.*, 21 Ohio App.3d 288, 488 N.E.2d 486 (1984).

6. In *Hines v. Continental Baking Co.*, 334 S.W.2d 140, 144–46 (Mo.App.1960), the Industrial Commission denied workmen's compensation benefits because the employee had not sustained an accidental injury. In the employee's subsequent personal injury suit, the court held the unappealed workmen's compensation determination

They are not in point. The nature of hearings before the Division of Workers' Compensation is markedly different. The workers' compensation proceedings provide for a full hearing before an Administrative Law Judge, under the civil rules of evidence. 8 Mo. CSR 50.2.010.21. Prehearing discovery is available. Section 287.560, RSMo 1986; *State ex rel. River Cement Co. v. Pepple*, 585 S.W.2d 122, 125 (Mo. App.1979). The administrative law judges deciding workers' compensation cases must be duly licensed attorneys. Section 287.-610.1, RSMo 1986. The workers' compensation proceedings, furthermore, are designed to provide conclusive answers to questions of causation of industrial injuries, and work-relatedness, with a special procedure superseding any right to trial by jury. Given the qualitative difference in the nature of these two tribunals, the extension of the preclusive effect given workers' compensation cases to unemployment compensation hearings is not warranted.

The case should be retransferred to the court of appeals with directions to determine the other issues raised by the appeal.

estopped the employer from asserting the occurrence was an accident within the scope of the workmen's compensation laws. The employee collected for work-related injuries not cognizable under workmen's compensation laws.

In *Butcher v. Ramsey Corp.*, 628 S.W.2d 912, 914 (Mo.App.1982), the Referee denied the employee's otherwise eligible workmen's compensation claim due to defective proof. The employee was then barred from asserting that the same facts alleged in her personal injury suit were not within the sole province of the workmen's compensation laws.