**Darryl C. BURKS, Plaintiff,**

v.

**COUNTY OF MILLER, MISSOURI, et al., Defendants.**

**No. 89–4150–CV–C–9.**

United States District Court, W.D. Missouri, C.D.

Oct. 4, 1990.

H. Ralph Gaw, Crews & Gaw, Tipton, Mo., for plaintiff.

Gerald E. Roark, Duane E. Schreimann, Hendren & Andrae, Jefferson City, Mo., for defendants.

## ORDER GRANTING DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT

BARTLETT, District Judge.

Plaintiff brings this action under 42 U.S.C. § 1983 alleging that his Fourteenth Amendment rights to equal protection and due process were violated when he was incarcerated in January 1989, for failure to pay a jail bill. Plaintiff contends that the county's remedy for failure to pay a jail bill was to levy his property and sell it to satisfy the debt pursuant to R.S.Mo. § 221.070. Plaintiff contends that no Missouri law authorizes imprisonment for nonpayment of a jail bill and, therefore, plaintiff was unlawfully sentenced to jail.

Defendants have moved for summary judgment claiming that plaintiff is collaterally estopped from raising this claim and further claiming that they are entitled to quasi-judicial immunity insulating them from any liability.

### I. *Undisputed Facts*

In 1983, plaintiff was charged in the Associate Circuit of Miller County, Missouri, with operating a motor vehicle without a valid operator's license. Defendant pled guilty to the criminal charge and was assessed "30 days in Miller County jail and costs." Court file at 1. The costs of the action were taxed at $34 plus the jail bill. *Id.* at 6. Furthermore, judgment was entered against plaintiff in the amount of $26 for the State of Missouri's Crime Victims Compensation Fund. *Id.* at 5. Plaintiff was not to be released from custody until "said fine and costs are fully paid...." Court file at 6. While plaintiff was serving his 30 day sentence in 1983, he suffered an appendicitis attack and was released to the hospital to undergo an emergency appendectomy. After the surgery, the sheriff's department permitted plaintiff's mother to

take plaintiff to her residence. The sheriff's department informed plaintiff's mother that it was not necessary for plaintiff to return to jail. At this time, plaintiff still owed $34 in costs and $26 for the crime victims fund plus the jail bill.

In January 1985, the court issued a warrant for plaintiff's arrest and an order to show cause why plaintiff should not be imprisoned for nonpayment of fine and costs. Pursuant to the 1985 warrant, plaintiff was arrested in October 1988. In November 1988, plaintiff's case was called in the Associate Circuit Court of Miller County. Plaintiff appeared with counsel and a hearing on plaintiff's failure to pay costs and the jail bill assessed in 1983 was set for December 1988, at which time the case was continued to January 11, 1989.

On January 9, 1989, plaintiff paid $71 towards the outstanding jail bill and court costs. There is some dispute about whether plaintiff was told $71 constituted full payment of the amount owed. Nevertheless, on January 9, 1989, a notation was made on a document entitled "Execution for Fine and Costs" indicating that after plaintiff paid $71, a balance for $354 remained for a jail bill. Court file at 13. On January 11, 1989, plaintiff failed to appear either personally or by counsel for the hearing at which time the court issued a warrant for plaintiff's arrest. Plaintiff was notified of the warrant and surrendered to the sheriff's office on January 20, 1989. Plaintiff was incarcerated on January 20, 1989. In a document entitled "Warrant Activity" and file-stamped January 20, 1989, a notation appears stating that plaintiff paid "fine and costs on 1–9–89" but "still owes jail bill of ... $382." Court file at 12.

Plaintiff was transported to the Associate Circuit Court of Miller County on January 23, 1989, at which time he appeared without counsel and admitted to "violation of fail to pay." Court file at 1. For the violation of failure to pay, Judge Norman J. Williams assessed plaintiff "30 days jail. Commitment ordered[.] Upon payment of fine and costs, defendant released." Court file at 1. On January 25, 1989, plaintiff's

mother paid whatever amount was due and plaintiff was released from jail. Plaintiff did not appeal the sentence imposed by Judge Williams.

Plaintiff asserts that his incarceration from January 20, 1989, through January 25, 1989, deprived him of his constitutional right to not be imprisoned for debt.

## II. *Standard for Summary Judgment*

■ Rule 56(c), Federal Rules of Civil Procedure, provides that summary judgment shall be rendered if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, it is the court's obligation to view the facts in the light most favorable to the adverse party and to allow the adverse party the benefit of all reasonable inferences to be drawn from the evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Inland Oil and Transport Co. v. United States*, 600 F.2d 725, 727–28 (8th Cir.), *cert. denied*, 444 U.S. 991, 100 S.Ct. 522, 62 L.Ed.2d 420 (1979).

■ If there is no genuine issue about any material fact, summary judgment is proper because it avoids needless and costly litigation and promotes judicial efficiency. *Roberts v. Browning*, 610 F.2d 528, 531 (8th Cir.1979); *United States v. Porter*, 581 F.2d 698, 703 (8th Cir.1978). The summary judgment procedure is not a "disfavored procedural shortcut." Rather, it is "an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). *See also City of Mt. Pleasant v. Associated Electric Cooperative, Inc.*, 838 F.2d 268, 273 (8th Cir.1988). Summary judgment is appropriate against a party who fails to make a showing sufficient to establish that there is a genuine issue for trial about an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 106 S.Ct. at 2553.

■ The moving party bears the initial burden of demonstrating by reference to portions of pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, the *absence* of genuine issues of material fact. However, the moving party *is not required* to support its motion with affidavits or other similar materials *negating* the opponent's claim. *Id.* (emphasis added).

■ The nonmoving party is then required to go beyond the pleadings and by affidavits, depositions, answers to interrogatories and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Id.* A party opposing a properly supported motion for summary judgment cannot simply rest on allegations and denials in his pleading to get to a jury without any significant probative evidence tending to support the complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The evidence favoring the nonmoving party must be more than "merely colorable." *Id.* 106 S.Ct. at 2511. When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (footnote omitted).

■ The inquiry to be made mirrors the standard for a directed verdict: whether the evidence presented by the party with the onus of proof is sufficient that a jury could properly proceed to return a verdict for that party. *Id.* Essentially, the question in ruling on a motion for summary judgment and on a motion for directed verdict is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson,* 106 S.Ct. at 2512.

### III. *Discussion*

Defendants argue that plaintiff's failure to appeal the order of incarceration in January 1989, collaterally estops plaintiff from raising his § 1983 claim in this case.

The Constitution's Full Faith and Credit Clause is implemented by the Federal Full Faith and Credit statute, 28 U.S.C. § 1738 which states in pertinent part:

Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they would have by law or usage in the courts of Such Territory or Possession from which they are taken.

In *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), the United States Supreme Court held that issues actually litigated in a state court proceeding are entitled to the same preclusive effect in a subsequent federal § 1983 suit as they enjoy in the court of the state where the judgment was rendered. The Court in *Allen* left open the possibility, however, that the preclusive effect of a state court judgment might be different regarding a federal issue that a § 1983 litigant could have raised but did not raise in the earlier state court proceeding.

The Court addressed this issue in *Migra v. Warren City School District Board of Education*, 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984). In *Migra,* the petitioner did not litigate her § 1983 claim in state court but asserted that the state court judgment should not preclude her suit in federal court simply because her federal claim could have been litigated in the state court proceeding. *Migra,* 465 U.S. at 83, 104 S.Ct. at 897. The Court held that § 1983 does not override state preclusion law and that petitioner's state court judgment has the same preclusive effect in federal court that it would have in a state court in the state in which the judgment emerged. Therefore, if state preclusion law would bar litigation of claims or issues raised in a subsequent action that could have been raised in a prior action, then the federal court should give the same preclu-

sive effect to the state court judgment as would a subsequent state court.

Under Missouri law, a party will be barred from raising in a subsequent action not only

points and issues upon which the court [in a prior action] was actually required by the parties to form an opinion and pronounce judgment, but to every point which properly belongs to the subject of litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time.

*Siesta Manor, Inc. v. Community Federal Savings and Loan Association,* 716 S.W.2d 835, 839 (Mo.App.1986) (quoting *Moore v. Beck,* 664 S.W.2d 15, 18 (Mo.App. 1984)). Although the court in *Siesta Manor* was applying the doctrine of res judicata, the principles stated therein also apply under the doctrine of collateral estoppel. Furthermore, under Missouri law, all issues which could have been presented on appeal, but were not, are deemed waived. *State v. Sykes,* 436 S.W.2d 32, 33 (Mo. 1969).

■ Generally, Missouri courts apply a four-prong test to determine whether the doctrine of collateral estoppel should apply: 1) whether the issue decided in a prior adjudication is identical to the issue presented in the present action; 2) whether the prior adjudication resulted in a judgment on the merits; 3) whether the party against whom collateral estoppel is asserted is a party or in privity with a party to the prior adjudication; and 4) whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit. *Bresnahan v. May Department Stores,* 726 S.W.2d 327, 330 (Mo. banc 1987).

■ To determine whether a party has had a fair opportunity to litigate the issue in the first lawsuit, a court must consider four more factors: 1) whether the person against whom estoppel is asserted had a strong interest to litigate the first action; 2) whether the second forum may afford the party against whom collateral estoppel is asserted procedural opportunities not available in the first action; 3) whether the prior judgment upon which collateral estoppel is based may be inconsistent with one or more prior judgments; and 4) whether the forum in the first action may have been substantially inconvenient to the party against whom estoppel is asserted. *Callahan v. Board of Probation and Parole,* 720 S.W.2d 445, 446 (Mo.App.1986).

■ Under the facts of this case, the first prong of the *Bresnahan* test should address whether the identical issue presented in the present action could have been raised in a prior action. In this case, plaintiff could have presented the identical issue raised here, the constitutionality of his sentence, on appeal in the state appellate court. Therefore, the first prong of the *Bresnahan* test is satisfied. The second and third prongs of the *Bresnahan* test are also satisfied because the prior criminal action resulted in a judgment on the merits and plaintiff was a party to that action. In determining whether plaintiff had a full and fair opportunity to litigate the issue presented here in the prior criminal action, the fourth prong of the *Bresnahan* test, I will apply the four factor test set out in *Callahan.*

Plaintiff satisfies the first factor of the *Callahan* test because he had a strong interest to litigate the constitutionality of his sentence in the first action. The second factor is also satisfied because the present forum does not afford plaintiff any procedural opportunities that were not available to him in the first action. The third factor is satisfied because the prior judgment is not inconsistent with one or more prior judgments. Finally, the fourth factor is satisfied because the forum in the first action was not substantially inconvenient to plaintiff. Therefore, plaintiff had a full and fair opportunity to litigate the issue of the constitutionality of the sentence in the prior criminal action.

Plaintiff argues that "§ 1983 does not require a person to exhaust all state court remedies and appeal prior to bringing a § 1983 action." In support of his position, plaintiff cites *Damico v. California,* 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967). In *Damico,* the court referred to

its holding in *McNeese v. Board of Education,* 373 U.S. 668, 671, 83 S.Ct. 1433, 1435, 10 L.Ed.2d 622 that: "[R]elief under the Civil Rights Act may not be defeated because relief was not first sought under state law which provided [an administrative] remedy." *Damico,* 389 U.S. at 417, 88 S.Ct. at 526.

■ As a general proposition, a party may bring a § 1983 action without exhausting state remedies. However, that does not mean that once a state court action has been brought and adjudicated that the state court judgment will not be given preclusive effect under the doctrine of res judicata and collateral estoppel. *Allen* and *Migra* both demonstrate that the doctrine of collateral estoppel can be applied to § 1983 claims brought in federal court if state preclusion law would operate to apply those principles.

In *Smith v. Sheriff Stephen Richards,* No. 87–1563–C–5, slip op. 1990 WL 198706 (E.D. Mo. January 19, 1990), the court was confronted with a case very similar to the instant action. In *Smith,* plaintiff had been a defendant in a prior criminal action. Plaintiff brought a § 1983 action alleging constitutional violations in connection with the state court criminal action that had never been raised in the prior action or on appeal. The court held that "plaintiff is precluded from relitigating issues in a § 1983 action that he fully litigated or could have litigated in his state court criminal trial or appeal." *Smith,* slip op. at 10. This case merits the same result.

### IV. *Order*

Thus, for the reasons stated, plaintiff is estopped from bringing his § 1983 action.

Accordingly, it is hereby ORDERED that defendants' Joint Motion for Summary Judgment is granted.