**Dr. William C. REED, Respondent,**

v.

**CITY OF SPRINGFIELD, Missouri, et al., Appellants.**

**No. 15089.**

Missouri Court of Appeals,
Southern District,
Division One.

Aug. 9, 1988.

Motion for Rehearing or Transfer to Supreme Court Denied Aug. 31, 1988.

Application to Transfer Denied
Oct. 18, 1988.

Karen Marty, Asst. City Atty., Springfield, for appellants.

Donald W. Jones, Hulston, Jones & Sullivan, Springfield, for respondent.

CROW, Chief Judge.

This is an appeal by the City of Springfield, Missouri ("the City"); the Springfield Mayor's Commission on Human Rights and Community Relations ("the Commission"); four individual members of the Commission; and Vickie O'Brien ("Complainant")[1] from a circuit court judgment reversing an order of the Commission.

The Commission's order was the result of two complaints by Complainant that her employer, Dr. William C. Reed ("Respondent"), had treated her in a discriminatory manner in connection with her employment. The first complaint, filed with the Commission April 11, 1984, identified the reason for the alleged discriminatory treatment as "Religion or Creed"; the second complaint, filed with the Commission May 30, 1984, identified the reason for the alleged discriminatory treatment as "Retaliation," and averred that after the filing of the first complaint, Complainant had been harassed by Respondent and had been told on May 23, 1984, that she had been "placed on indefinite suspension" pending an investigation to determine whether her employment should be terminated.

A hearing before four members of the Commission[2] commenced August 29, 1984. Complainant appeared in person. The Commissioner presiding over the hearing announced that proof in support of the complaints would be presented by a member of the City's law department "who serves this function at the request of the Commission." Respondent appeared in person and by counsel.

Prior to the presentation of evidence, Respondent's counsel moved orally that the Commission dismiss the complaints because the City's charter vested the judicial power of the City in the Municipal Court. Respondent's counsel declared that the charter provided for only two types of boards (advisory boards and administrative boards), neither of which were vested by the charter with judicial power. At the conclusion of his remarks Respondent's counsel filed with the Commission a document captioned "Employer's Opening Statement and Summary of Defenses," which document is henceforth referred to as "Respondent's opening statement." Attached to Respondent's opening statement was a copy of a decision of an Appeals Referee of the Missouri Division of Employment Security dated August 10, 1984, affirming an earlier determination by a deputy of the Division that Complainant was disqualified for benefits under the Missouri Employment Security Law for ten weeks, based on a finding that she was discharged from employment by Respondent on May 21, 1984, "for misconduct connected with her work." Respondent's opening statement proclaimed that the determination by the Appeals Referee "may be binding under the doctrine of res judicata or collateral estoppel."

---

1. While the pleadings in the circuit court and the notice of appeal are ambiguous with respect to whether the City was a party to the litigation, the jurisdictional statement in the Appellants' brief identifies the City as a party, perhaps in an effort to satisfy *Yellow Freight System, Inc. v. Mayor's Commission on Human Rights*, 737 S.W. 2d 250, 253–54[2] (Mo.App.1987). Respondent does not challenge the jurisdictional statement. Accordingly, we shall proceed on the premise that the City was a party.

2. The four members named in the notice of appeal: Scott B. Tinsley, Lyle Leisenring, Donna Cofer and Joyce Munden.

The Commissioner presiding over the hearing denied Respondent's motion to dismiss the complaints, whereupon an assistant city attorney presented evidence in support of them. Complainant, the first witness, conceded on cross-examination that she had filed a claim for "unemployment benefits" and that a written decision on the claim had been rendered August 10, 1984, by an Appeals Referee. Complainant identified Respondent's Exhibit 3 as a copy of the decision, whereupon the exhibit was offered in evidence by Respondent and received by the Commissioner presiding over the hearing.

As there was insufficient time to complete the evidence, the hearing was adjourned to September 7, 1984, when further evidence was adduced. There proved to be inadequate time to complete the evidence that date, making another adjournment necessary. On September 21, 1984, two weeks after the second session, Respondent mailed to the Commission a document captioned "Answer," which identified certain provisions of the Constitution of Missouri that, according to Respondent, reserved judicial power to courts and judges. The answer also averred that the City's charter reserved all power to enforce ordinances to the Municipal Court, therefore any decision by the Commission purporting to determine whether any ordinance had been violated by Respondent would not be within the jurisdiction of the Commission. Furthermore, pled the answer, to the extent that any ordinance of the City provided otherwise, such ordinance was void, being in conflict with the Constitution of Missouri and the City's charter. Another segment of the answer averred that the action before the Commission was "barred under principles of res judicata and collateral estoppe[l] in that the Employment Security Division has determined in the decision which has been ... received in evidence that the complainant was suspended and discharged on or after May 21, 1984 for reasons which are not connected with any complaint filed by complainant, or any protected religious beliefs or practices of complainant, but ... for legitimate reasons in that complainant had grossly violated her duties to her employer by taking a bandage off a patient contrary to repeated oral and written directives and admonitions not to do so...."

The hearing resumed October 10, 1984; the evidence was completed that date.

On November 28, 1984, the Commission entered its "Findings of Fact, Conclusions of Law, and Order" which, insofar as pertinent to this appeal, provided:

"A.  *Findings of Fact:*

1.  That at all times pertinent to this inquiry, Respondent was and is an employer conducting his business within the city limits of Springfield, Greene County, Missouri.

2.  That the acts complained of occurred ... at or near ... the offices of Respondent.

3.  That the acts complained of took place during the period ... from on or about July 28, 1983, to on or about May 23, 1984, during which period of time Complainant was employed by Respondent.

4.  That at all times pertinent to this inquiry, Complainant had bona fide religious beliefs.

5.  That subsequent to Complainant's employment by Respondent, Respondent initiated discussions with employees, including Complainant, in which Bible scriptures were read and discussed; that these discussions were conducted frequently and regularly, and generally twice per week.

6.  That on or about March 30, 1984, during such a religious discussion and review of specific Bible verses with Complainant and another employee, the Respondent classified and/or labeled the Complainant as a fornicator under his ... interpretation of the Bible.

7.  That on or about April 2, 1984, Complainant informed Respondent that she no longer wished to participate in religious discussions.

8.  That said religious discussions referred to above, in addition to prayer at the time of surgery and at meals, continued on a regular basis, although Com-

plainant was not required to participate therein.

9. That on or about April 6, 1984 Respondent told Complainant that she was terminated as of the last day of April, for the reason that her attitude was disturbing the office and she held a grudge as the result of the religious discussion on March 30, 1984.

10. That thereafter, on or about April 10, 1984 Respondent told Complainant she would not be terminated because Respondent felt that, as a Christian, he should give her another chance.

11. That subsequent to the religious discussion of March 30, 1984 in which Complainant was labeled as a fornicator, there was tension in the office which was not conducive to good working relationships.

12. That on or about May 1, 1984 Respondent issued a disciplinary letter to Complainant for opening Respondent's mail while Complainant [sic] was on vacation; Respondent testified that said action by Complainant was contrary to specific and direct instructions; Complainant testified that she was unaware of said instructions.

13. That Respondent's classification of Complainant as a fornicator created an environment within the Respondent's office which tended to deprive Complainant of employment opportunities which might otherwise have been available to her, and otherwise adversely affected her status as an employee.

. . . .

16. That on or about May 21, 1984 the Respondent constructively discharged the Complainant for removal of a bandage that she was directly instructed not to remove.

17. That there was in effect at all times pertinent to this inquiry an ordinance entitled 'Fair Employment Practices, Article I, Section 18A–3 of the City Code of Springfield, Missouri.'

B. *Conclusions of Law:*

1. That Respondent is an employer within the meaning of . . . the Springfield City Code.

2. That Complainant has proven by a preponderance of the evidence that Respondent discriminated against her on the basis of religion, in that Respondent classified and labeled Complainant on the basis of religion, and that said classification and labeling created an environment within the Respondent's office which tended to deprive Complainant of employment opportunities which might otherwise have been available to her, and which otherwise adversely affected Complainant's status as an employee, which practice is contrary to the requirements of Springfield City Code, Section 18A–3(a).[3]

C. *Order*

The Commission, pursuant to its authority as described in . . . the Springfield City Code, hereby orders that Respondent compensate Complainant in the amount of Two Thousand Five Hundred Twenty Dollars . . . for the aforesaid discrimination which occurred during the period of Complainant's employment with Respondent."

Respondent filed a motion asking the Commission to reconsider, amend and clarify its decision in sundry respects. Included in Respondent's motion was an averment that the Commission had failed to discuss the res judicata and collateral estoppel issues raised in Respondent's answer. Respondent's motion further alleged that by commanding him to pay Complainant $2,520, the Commission had "assumed the power to impose a tort remedy, a type of remedy for which there is no authority in

---

**3.** At the hearing on August 29, 1984, the Commission received in evidence a certified copy of Chapter 18A of the Springfield City Code. Section 18A–3 thereof provides:

"It shall be an unlawful employment practice: (a) For an employer, because of the . . . religion . . . of any individual . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment; for an employer to . . . classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee because of such individual's . . . religion. . . ."

the Commission to impose." The motion added that the Commission had no power to impose a fine on Respondent.

On December 26, 1984, the Commission entered "Amended Findings of Fact, Conclusions of Law, and Order" which, insofar as pertinent to this appeal, provided:

"1. All previous findings of fact, conclusions of law, and orders issued ... in this case are incorporated herein by reference.

. . . .

3. ... this Commission has the power and authority ... to order the relief which was granted, pursuant to Section 18A–12 of the Springfield City Ordinance, which provides that the Commission, upon a finding that the Respondent has engaged in an unlawful discriminatory practice, shall ... take such other action as in the judgment of the Commission will effectuate the purposes of this article."

Respondent filed a timely petition for review in the Circuit Court of Greene County per chapter 536, RSMo 1978,[4] and § 18A–13 of the Springfield City Code.[5] Respondent's petition alleged, among other things, that the Commission's order should be reversed because the Commission lacked jurisdiction "to issue judgments or orders in the nature of tort remedies or fines or penalties," and that the Commission, in awarding Complainant $2,520, had attempted "to usurp power vested exclusively in the courts of this state under the Missouri Constitution and under the Springfield City Charter." Respondent's petition further alleged that the Commission's order should be reversed for all of the reasons set forth in (a) the answer filed by Respondent with Commission, and (b) the motion for reconsideration filed by Respondent with the Commission.

The case was assigned to Division 1 of the Circuit Court of Greene County, presided over by Honorable David P. Anderson.

Several months after the filing of the petition, the assistant city attorney representing the City, the Commission, the four individual members of the Commission, and Complainant—those parties are henceforth referred to collectively as "Appellants," as they occupy that position in this Court—moved Judge Anderson to remand the cause to the Commission "in order [for the Commission] to clarify whether the compensation ordered by the Commission in the amount of $2,520.00 constituted compensation for back wages, humiliation, or some other item."

Judge Anderson granted the motion, whereupon the Commission entered "Second Amended Findings of Fact, Conclusions of Law, and Order" which, insofar as pertinent to this appeal, provided:

"1. All previous findings of fact, conclusions of law, and orders ... are incorporated herein by reference.

2. The [Commission] makes the following additional conclusion of law: That Complainant's discharge was the result of religious discrimination and retaliation of Respondent.

3. ... The Commission ... orders that Respondent compensate Complainant in the amount of $2,520.00 for back pay, specifically $180.00 per week for 14 weeks running from her unlawful discharge on May 21, 1984 through August 29, 1984, the hearing date."

Thereafter, while the case was pending before Judge Anderson, judgment was entered in an unrelated case involving the Commission by Division 3 of the Circuit Court of Greene County, presided over by Honorable Donald E. Bonacker. Judge Bonacker's case was an action by an employer (Yellow Freight System, Inc.) for judicial

---

4. Section 536.100, RSMo 1978, provided, in pertinent part: "Any person who has exhausted all administrative remedies provided by law and who is aggrieved by a final decision in a contested case ... shall be entitled to judicial review thereof, as provided in sections 536.100 to 536.-140, unless some other provision for judicial review is provided by statute...."

5. Section 18A–13, Springfield City Code, provides, in pertinent part: "Any complainant, respondent or other person deeming themselves aggrieved by an order of the commission may obtain judicial review thereof in accordance with the provisions of the Administrative Procedure Review Act of the State of Missouri...."

review of an order of the Commission commanding Yellow Freight to pay a former employee a specified sum of money for "back wages." The judgment entered by Judge Bonacker declared, among other things, that the Commission's order was void.[6] Among Judge Bonacker's reasons for that conclusion was that the City's charter authorized the creation of agencies of only two types, administrative and advisory, that the judicial power of the City to determine all violations of the City's ordinances or charter was lodged exclusively in the Municipal Court by the City's charter, and that the attempt to confer such authority on the Commission violated the City's charter and the Constitution of Missouri.

Soon after the entry of Judge Bonacker's judgment, Respondent moved Judge Anderson for summary judgment, averring that he (Respondent) had asserted the Commission's order in the instant case was void for the same reasons articulated by Judge Bonacker in the Yellow Freight judgment. Respondent prayed Judge Anderson to "judicially notice" Judge Bonacker's judgment and to "follow and adopt the analysis of Judge Bonacker" in the Yellow Freight case.

On December 29, 1986, Judge Anderson entered a judgment granting Respondent's motion. In that judgment, Judge Anderson took judicial notice of the provisions of the City's charter identified in Judge Bonacker's judgment, and declared that for the reasons given by Judge Bonacker in the Yellow Freight case, the Commission "had no authority or jurisdiction to exercise judicial functions or powers to make determinations or findings or orders concerning whether or not [Respondent] had violated the City Ordinances involved in [the instant] proceeding, or to assert authority over [Respondent] therein." Judge Anderson held that the Commission's order

should be reversed and set aside "as being of no force and effect."

This appeal followed.

Appellants' first point maintains that Judge Anderson lacked jurisdiction to enter his judgment in that such judgment determined that the ordinances delegating certain powers to the Commission violated the Constitution of Missouri, and under Rule 87.04 [7] any challenge to the constitutionality of a municipal ordinance requires that the Attorney General be served with a copy of the proceeding and be entitled to be heard. Appellants aver, and the record confirms, that the Attorney General was not served in the instant case.

Rule 87.04 provides:

"When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration.... In any proceeding which involves the validity of a municipal ordinance ... such municipality shall be made a party, and shall be entitled to be heard, and, if the ... ordinance ... is alleged to be unconstitutional, the Attorney General of the state shall also be served with a copy of the proceeding and be entitled to be heard." [8]

In support of their first point, Appellants cite *Yellow Freight System, Inc. v. Mayor's Commission on Human Rights*, 737 S.W.2d 250 (Mo.App.1987),[9] the opinion of this Court adjudicating the appeal of the judgment entered by Judge Bonacker on which Judge Anderson had relied in entering his judgment in the instant case. As explained earlier, *Yellow Freight* was an action brought in the circuit court by an employer seeking judicial review of an order of the Commission commanding the employer to pay "back wages" to a former employee. In a second count the employer in *Yellow Freight* sought declaratory relief including a proclamation that the ordinances of the City purporting to create civil

---

6. Judge Bonacker's case subsequently reached this Court by appeal. *Yellow Freight System, Inc. v. Mayor's Commission on Human Rights*, referred to in footnote 1, *supra*. The judgment was reversed and the cause was remanded. 737 S.W.2d at 254.

7. Rule references are to Missouri Rules of Civil Procedure (18th ed. 1987).

8. Section 527.110, RSMo 1986, mirrors Rule 87.04.

9. Footnotes 1 and 6, *supra*.

liabilities between private citizens regarding employment practices and to confer jurisdiction on the Commission to adjudicate contested cases arising therefrom were an unconstitutional exercise of power by the City and were null and void. The City had not been made a party to the circuit court action in *Yellow Freight,* and nothing in the record reflected that the Attorney General of Missouri had been served with a copy of the proceeding.

The judgment entered by Judge Bonacker in *Yellow Freight* declared the Commission's order in that case null and void, and enjoined its enforcement. In addition, the judgment enjoined and prohibited the Commission from hearing and determining *any* violations of the City's ordinances, and from establishing remedies and orders for such violations.

This Court's opinion in *Yellow Freight* emphasized that inasmuch as the proceeding there involved the validity of the City's ordinances, Rule 87.04 required that the City be made a party with the right to be heard. 737 S.W.2d at 253–54[2]. Consequently, the City was an indispensable party, and the failure to join the City as a party invalidated the circuit court's judgment. *Id.* In addition, this Court's opinion in *Yellow Freight* pointed out that the circuit court found the ordinances in question to be unconstitutional and apparently construed the employer's petition to so allege. The opinion continued:

"If that construction is valid, an additional flaw was the failure to serve the Attorney General of Missouri 'with a copy of the proceeding' and afford him an opportunity to be heard. Since the nonjoinder of the City is fatal to the judgment, it is unnecessary to consider the significance, if any, of the failure to serve the Attorney General." *Id.* at 254.

Respondent answers Appellants' first point by reminding us that in *Yellow Freight* the employer included in its petition a count seeking relief by declaratory judgment, a procedure governed by Rule 87, of which Rule 87.04 is a part. Respondent emphasizes that his petition to the circuit court in the instant case sought only judicial review of the Commission's order pursuant to chapter 536, RSMo 1978, and that he sought no relief by declaratory judgment. Respondent correctly points out that § 536.110.2, RSMo 1978, provided, in pertinent part:

"No summons shall issue in such case, but copies of the petition shall be delivered to the agency and to each party of record in the proceedings before the agency or to his attorney of record, or shall be mailed to the agency and to such party or his said attorney by registered mail, and proof of such delivery or mailing shall be filed in the case."

Respondent also directs our attention to Rule 100.01, which states:

"The provisions of sections 536.100 through 536.150, RSMo, shall govern procedure in circuit courts for judicial review of actions of administrative agencies unless the statute governing a particular agency contains different provisions for such review."

Respondent underscores the fact that in the instant case the Attorney General was not a party of record in the proceeding before the Commission, and nowhere in any of the statutes enumerated in Rule 100.01, above, is there any requirement for service of a copy of the "proceeding" on the Attorney General.

Furthermore, says Respondent, § 536.140, RSMo 1978, which governed the scope of a circuit court's review in a proceeding for review of a decision of an administrative agency, provided:

"2. The inquiry may extend to a determination of whether the action of the agency

(1) Is in violation of constitutional provisions;

(2) Is in excess of the ... jurisdiction of the agency;

. . . .

(4) Is, for any other reason, unauthorized by law;

. . . ."

Those provisions, argues Respondent, make it evident that the General Assembly contemplated that a party aggrieved by a

decision of an agency of a municipality could ask a circuit court to determine whether such agency's authority was in violation of the Constitution of Missouri or was otherwise unauthorized by law, or whether the ordinance purporting to confer authority on such agency to render such decision violated the Constitution of Missouri or the municipality's charter. If, in such circumstances, the General Assembly had believed the Attorney General should be served in the circuit court action, Respondent insists that the General Assembly would have included such requirement in § 536.110, *supra.* As the statute included no such requirement, and inasmuch as Respondent did not seek a declaratory judgment in the instant case, Respondent maintains that Rule 87.04 did not apply, hence the failure to serve the Attorney General with a copy of the proceeding created no jurisdictional flaw in the circuit court.

We begin our evaluation of Appellants' first point by observing that Respondent's petition in the circuit court was brought under chapter 536, RSMo 1978, which authorized circuit courts to review decisions of administrative agencies. Unlike the employer's petition in *Yellow Freight*, Respondent did not seek a declaratory judgment. The Attorney General was not a party to the proceeding before the Commission and, as we have seen, § 536.110.2, RSMo 1978, provided that in a circuit court action for review of a decision of an administrative agency, no summons should issue but copies of the petition should be delivered to the agency and to *each party of record in the proceedings before the agency,* which delivery could be made by registered mail. Nothing in § 536.110 provided that where a municipal ordinance was alleged to be unconstitutional in a circuit court proceeding under chapter 536, the Attorney General was to be served where he had not been a party to the proceeding before the agency. As Rule 87.04, which requires service on the Attorney General, lies within the series of rules pertaining to actions for *declaratory judgment,* it is arguable that it does not apply in judicial review proceedings under chapter 536. However, as shall become apparent later,

we need not decide that issue, and it is evident that the issue was not addressed in *Yellow Freight.* 737 S.W.2d at 253, n. 2.

Our next observation is that while our opinion in *Yellow Freight* pointed out that the Attorney General should have been served in that case, we did not decide what effect, if any, that the failure to do so had on the circuit court's judgment. 737 S.W. 2d at 254. The only other Missouri case cited by Appellants in support of their first point is *Land Clearance for Redevelopment Authority v. City of St. Louis,* 270 S.W.2d 58 (Mo. banc 1954), where the validity of municipal ordinances was in issue in a *declaratory judgment* action in the circuit court. In that case the Supreme Court of Missouri held that inasmuch as none of the parties had raised any objection to the failure to serve the Attorney General, the Supreme Court would determine, as between the parties thereto, the issues presented by the appeal. *Id.* at 63–64[6].

In the instant case, nothing in the record before us shows that any of the Appellants raised any issue in the circuit court regarding the failure to serve the Attorney General. It is thus arguable that *Land Clearance* does not require us to hold that the circuit court lacked jurisdiction to enter its judgment in the instant case and, as noted earlier, *Yellow Freight* did not reach the issue of the effect of failure to serve the Attorney General.

However, we need not endeavor to stake out the perimeters of *Land Clearance* or *Yellow Freight* in this opinion because, as explained hereunder, we have determined that it is unnecessary in the resolution of this appeal to reach the issue of the validity of the ordinances of the City purporting to confer authority on the Commission to grant the type of relief awarded in the instant case. Consequently, the failure to serve the Attorney General with a copy of the proceeding and to afford him an opportunity to be heard in the circuit court regarding the validity of the ordinances will have no effect on the outcome of this case or on the validity of the ordinances. The result of this case will be exactly as it would have been had no issue regarding

the constitutionality of the ordinances been raised in the circuit court. That being so, we are unconvinced that we must declare the circuit court's judgment a nullity because the Attorney General was not served. Appellants' first point is denied.

We next consider Appellants' second, third and fourth points which, as shall become apparent *infra,* can be disposed of together.

Appellants' second point avers the circuit court was without subject matter jurisdiction to determine questions involving the Constitution of Missouri, the City's charter, and the City's ordinances in that Respondent's petition for review in the circuit court failed to specifically designate the provisions of the constitution, the charter, and the ordinances relied upon by Respondent in seeking reversal of the Commission's decision, and therefore failed to preserve such issues for review. Appellants' third point asserts that the circuit court judgment "is not certain and complete in itself" in that Judge Anderson erroneously purported to take judicial notice of the exhibits and to adopt the reasoning of Judge Bonacker in the *Yellow Freight* case, but Judge Anderson's judgment did not specifically state or incorporate by reference the exhibits recognized or the portions of the reasoning adopted from Judge Bonacker's judgment, nor did Judge Anderson's judgment state how the exhibits or reasoning in Judge Bonacker's case applied to the facts and law in the instant case. Appellants' fourth point proclaims Judge Anderson erred in granting Respondent's request for summary judgment in that Rule 74.04 requires a party seeking summary judgment to demonstrate there is no genuine issue as to any material fact, and Respondent's motion was insufficient to make such showing.

■ Appellants' second, third and fourth points overlook the well established principle that an appellate court, on appeal of a circuit court judgment in an action for judicial review of a decision of an administrative agency, reviews the findings and decision of the agency and not the judgment of the circuit court. *City of Cabool v. Mis-*

*souri State Board of Mediation,* 689 S.W. 2d 51, 53[1] (Mo. banc 1985); *Evangelical Retirement Homes of Greater St. Louis, Inc. v. State Tax Commission,* 669 S.W.2d 548, 552[2] (Mo. banc 1984); *Fleming Foods of Missouri, Inc. v. Runyan,* 634 S.W.2d 183, 184[1] (Mo. banc 1982); *Watkins v. State Board of Registration for the Healing Arts,* 651 S.W.2d 582, 584–85[4] (Mo.App.1983); *Mueller v. Ruddy,* 617 S.W.2d 466, 472[1] (Mo.App.1981), *cert. denied,* 454 U.S. 1055, 102 S.Ct. 600, 70 L.Ed.2d 591 (1981). Consequently, if a circuit court arrives at a correct result in an action for judicial review of a decision of an administrative agency, the circuit court's judgment should be affirmed, and an appellate court should not reverse the circuit court's judgment solely on the basis of an error of law committed by the circuit court which is unrelated to the merits of the appeal. *Evangelical Retirement Homes,* 669 S.W.2d at 552.

For the reasons that follow, we conclude that the Commission, in its Second Amended Findings of Fact, Conclusions of Law, and Order, erred in (a) ruling that Complainant's discharge from employment by Respondent was the result of religious discrimination and retaliation by Respondent, and (b) awarding Complainant the $2,520 for "back pay." The circuit court consequently reached the correct result in reversing the Commission's order, hence the circuit court's judgment must be affirmed.

As reported earlier, Respondent, in his opening statement to the Commission and in his answer filed with the Commission, asserted that the action against him was barred by collateral estoppel in that the reason for his discharge of Complainant from employment had been determined in the proceeding for unemployment insurance benefits brought by Claimant in the Division of Employment Security. Respondent, it will be recalled, presented in evidence to the Commission (as Respondent's Exhibit 3) a copy of the decision of the Appeals Referee of the Missouri Division of Employment Security dated August 10, 1984. Pertinent excerpts from that document are quoted below, wherein Com-

plainant is denominated as "claimant" and Respondent is referred to as "employer." The document stated:

"A deputy determined under the Missouri Employment Security Law that the claimant was disqualified for benefits for ten weeks for which she claims benefits and is otherwise eligible, on a finding that she was discharged on May 21, 1984, for misconduct connected with her work. The claimant filed a timely appeal from that determination. . . .

[T]he Appeals Tribunal heard the [appeal] on August 3, 1984, in Springfield, Missouri. The claimant was present and testified. The claimant was represented by [counsel]. William C. Reed testified. . . . The employer was represented by [counsel].

Findings:

The claimant worked for the employer as a podiatrist assistant for approximately ten months. She last worked May 21, 1984. She was suspended on May 21, 1984, and later discharged. The immediate reason for her discharge was that she had removed the bandage from the foot of a patient after having been specifically told, more than once, not to remove that bandage. That error resulted in additional surgery for the patient.

The claimant contends that her error was due to stress incurred as a result of discussions of religion between she and other persons within the employer's office. No such discussions had occurred since April 1984.

. . . .

The Missouri Employment Security Law provides that a claimant shall be disqualified for waiting week credit or benefits for not less than one nor more than sixteen weeks for which he claims benefits and is otherwise eligible if it is found that he has been discharged for misconduct connected with his work. . . .

It is found that the claimant was suspended on May 21, 1984. That suspension was later converted to a discharge. It is found that the claimant was discharged due to an act of negligence which was of such degree as to evidence a disregard for the interests of the employer. Therefore, it is found that the claimant was discharged on May 21, 1984, for misconduct connected with her work and that a disqualification for ten weeks is appropriate.

. . . ."

In *Bresnahan v. May Department Stores Co.*, 726 S.W.2d 327 (Mo. banc 1987), an employee was discharged for violating her employer's rule that any attempt to remove the employer's property from the premises without authority was grounds for immediate dismissal. The employee made a claim for unemployment insurance benefits with the Division of Employment Security. A deputy of the Division made a determination that the employee was not qualified for benefits because she had been discharged for misconduct connected with her work, in that she had been observed leaving the employer's store with an item of merchandise for which she had not paid. On appeal by the employee, an Appeals Referee of the Division conducted an evidentiary hearing and found that the employee was discharged because she had attempted to take merchandise from the employer without payment. The Appeals Referee affirmed the deputy's denial of benefits. The employee then filed an application for review by the Labor and Industrial Relations Commission, which resulted in a decision upholding the Appeals Referee. The employee did not thereafter seek judicial review. She did, however, file a damage suit against the parent company of her employer alleging, among other things, breach of an implied contract of employment. A jury trial produced a verdict for the employee for actual and punitive damages. The trial court set aside the punitive damage award, but entered judgment for actual damages.

The Supreme Court of Missouri reversed, explaining that the fact issue litigated in the administrative proceeding, i.e., did the employee attempt to remove the employer's property from the store without paying for it and, in so doing, did she violate company rules, which conduct justified immediate dismissal, was identical with the fact issue presented in the lawsuit. *Id.* at 330. The

Court pointed out that collateral estoppel deals with issue preclusion, meaning that when a fact is appropriately determined in one legal proceeding, it is given effect in another lawsuit in cases where such fact or facts are a vital part of the evidentiary chain necessary to be established in order to prove a cause of action. *Id.* at 329[1]. Applying the doctrine of collateral estoppel in *Bresnahan*, the Supreme Court held that the prior adjudication by the Labor and Industrial Relations Commission, when not appealed, resulted in a final and conclusive determination of the pivotal fact issue presented by the subsequent lawsuit. *Id.* at 330. Accordingly, the employee was barred from relitigating such issue in the lawsuit. *Id.*

■ In the instant case the issue before the Division of Employment Security was whether Complainant was discharged for misconduct connected with her work. The Appeals Referee, as we have seen, determined, after an evidentiary hearing, that Complainant was discharged by Respondent because she had removed a bandage from the foot of a patient after being specifically told, more than once, not to do so, and that the error resulted in additional surgery for the patient. The Appeals Referee further found that Complainant's act was of such degree as to evidence a disregard for the interests of Respondent. So far as the record shows, the decision of the Appeals Referee became final for lack of further administrative or judicial review. Appellants do not claim otherwise.

Respondent testified before the Commission that he discharged Complainant because she removed the bandage, and he contended that the doctrine of collateral estoppel precluded her from relitigating, before the Commission, the issue of the reason for the termination of her employment.

The Commission, however, in its Second Amended Findings of Fact, Conclusions of Law, and Order, found that Complainant's discharge was the result of religious discrimination and retaliation by Respondent, and the Commission commanded Respondent to pay Complainant $2,520 representing back pay for 14 weeks commencing on the date of discharge. The Commission's findings and order were flatly contrary to the decision of the Appeals Referee.

Appellants argue otherwise, claiming that the issue before the Appeals Referee was whether Complainant engaged in misconduct connected with her work sufficient to justify a disqualification for unemployment insurance benefits, whereas the issue before the Commission was whether Complainant was treated in an "illegally discriminatory manner." The argument is without merit. The Commission's Second Amended Findings of Fact, Conclusions of Law, and Order make it indisputably clear that the monetary award granted Complainant by the Commission was based on the Commission's finding that Respondent discharged Complainant because of religious discrimination and retaliation, and that the sum awarded represented back pay from the date of the discharge to the date that the hearing began before the Commission. We are therefore convinced that if the rule of collateral estoppel set forth in *Bresnahan* applies to the instant case, Complainant was barred from claiming before the Commission that her discharge from employment by Respondent was the result of religious discrimination and retaliation.

In determining whether the rule applies, we note that *Bresnahan* was decided by the Supreme Court of Missouri March 17, 1987, while the instant appeal was pending before us. The last order of the Commission (the second amended one) was entered more than a year and a half prior to *Bresnahan*.

Those circumstances, however, do not mean that the defense of collateral estoppel articulated in *Bresnahan* was unavailable to Respondent in the proceeding before the Commission.

■ *Bresnahan* recognized that collateral estoppel had been applied by Missouri courts in past instances where a fact issue was raised and decided in an administrative proceeding and relitigation later attempted in a circuit court action. 726 S.W.2d at 329. *Bresnahan*, therefore, did not estab-

lish a new rule of law or change any existing rule of law, it merely applied the established doctrine of collateral estoppel to the facts in that case. Accordingly, we need not concern ourselves with the test set forth in *Sumners v. Sumners*, 701 S.W.2d 720, 722–25 (Mo. banc 1985), which comes into play when a judicial decision changes existing law and the question for determination is whether to apply the change retroactively or only prospectively. As *Bresnahan* neither established nor changed the doctrine of collateral estoppel, such defense was available to Respondent at the time he asserted it in his opening statement to the Commission, and it remains available to him now unless it has been taken from him by H.B. 1485, 84th General Assembly, Second Regular Session 1988, § 288.215.1, effective March 1, 1988.[10] That provision states:

"Any finding of fact, conclusion of law, judgment or order made by an appeals tribunal [or] the labor and industrial relations commission ... in any proceeding under this chapter shall not be conclusive or binding in any separate or subsequent action not brought under this chapter, and shall not be used as evidence in any subsequent or separate action not brought under this chapter, before [a] ... commission ... judge or court of this state ... regardless of whether the prior action was between the same or related parties or involved the same facts."

Assuming, without deciding, that the above statute destroys the collateral estoppel effect of a finding of fact made in a proceeding for unemployment insurance benefits under chapter 288, RSMo 1986, where the same issue arises later in another forum, it is incumbent on us to determine whether the statute has stripped Respondent of such defense in the instant case.

In *Wilson v. Kuenzi*, 751 S.W.2d 741 (Mo. banc, 1988), the Supreme Court of Missouri stated:

"The Missouri Constitution, Article 1, § 13, prohibits retrospective application of a statute unless there is clear legislative intent to give it retrospective operation either by express language or by implication, and the statute is procedural only and does not affect any substantive right of the parties." *Id.* at 742[1].

We find nothing in H.B. 1485 manifesting a clear legislative intent to give the legislation retrospective operation either by express language or by implication. Furthermore, retrospective operation would presumably affect a substantive right of one of the parties, in that it would apparently divest Respondent of the collateral estoppel defense that existed at the time the dispute was heard and determined by the Commission.

A case analogous to the one before us is *Dragna v. Auto Owner's Mutual Insurance Co.*, 687 S.W.2d 277 (Mo.App.1985), where an insured sought recovery from her insurer under the uninsured motorist provision of her insurance policy. Summary judgment was entered in favor of the insurer. The ensuing year, by reason of a statutory amendment, a claim identical to the one previously asserted by the insured became viable. The insured filed the action anew, but again suffered an adverse judgment in the circuit court. On appeal, the Western District of this Court held that the effect of the statutory amendment was to create new rights, thus it was substantive rather than procedural. *Id.* at 279. The Court declined to apply the statute retroactively. *Id.*

We are convinced *Wilson* and *Dragna* bar retroactive application of new § 288.215.1 in the instant case. Respondent's collateral estoppel defense thus remains viable and, as explained *supra*, bars the Commission from holding that Respondent discharged Complainant from employment because of religious discrimination and retaliation, and further bars the Commission from ordering Respondent to pay Complainant for the period from her dis-

---

**10.** The legislation appears in Vernon's Missouri Legislative Service, pamphlet number 1, March, 1988, pp. 2–31.

charge until the commencement of the Commission's hearing.[11]

The foregoing conclusions require us to affirm the circuit court's judgment reversing the Commission's order. That being true, we need not consider Appellants' fifth (and final) point, which avers that Judge Anderson erred in relying on Judge Bonacker's decision in *Yellow Freight* in that Judge Bonacker's decision was itself incorrect for sundry reasons. We are concerned in this appeal only with the correctness of Judge Anderson's judgment. Having found it to be right, we need not examine Judge Bonacker's reasons for deciding *Yellow Freight* as he did.

The judgment of the circuit court in the instant case reversing the Commission's order is affirmed.

GREENE, P.J., and HOLSTEIN, J., concur.

**11.** We do not overlook *Sigetich v. Great Eagle Enterprises Corp.*, 752 S.W.2d 463, (Mo.App.E.D. 1988), which held the doctrine of collateral estoppel set forth in *Bresnahan* did not apply where there was no dispute about the fact that an employee had engaged in a sexual liaison with the wife of his immediate superior during the period of employment. In a suit by the employee against the employer for breach of the employment contract, the employee claimed he was fired because of the indiscretion. The employer, while maintaining that the employee resigned, attempted to assert the defense of collateral estoppel based on a determination by the Labor and Industrial Relations Commission that the employee was guilty of misconduct by reason of his dalliance with his superior's wife. The contract of employment allowed the employer to discharge the employee if the latter caused substantial injury to the employer by reason of willful misfeasance, gross negligence or reckless disregard of the duties involved in the conduct of the employee's office or by reason of intentional breach of the contract. The Eastern District of this Court pointed out that the administrative determination that the employee was guilty of misconduct did not resolve the issue of whether such misconduct constituted a ground for termination under the employment contract, as that issue was a question of *law*. In the instant case the decisive issue was one of *fact*, i.e., whether Respondent discharged Complainant because of the removal of the bandage, which resulted in additional surgery for the patient and the danger of a malpractice action against Respondent, or whether Respondent discharged Complainant because of religious discrimination and retaliation. We therefore espy no conflict between our decision in the instant case and *Sigetich.*