**GEORGE'S PROCESSING, INC., Appellant,**

v.

**Henry OTTENDORF and Division of Employment Security, Respondents.**

**No. 24162.**

Missouri Court of Appeals, Southern District, Division Two.

Oct. 30, 2001.

Angela M. Doss, Bassett Law Firm, Fayetteville, AR, for appellant.

No appearance for respondent.

JOHN E. PARRISH, Judge.

George's Processing, Inc., (employer) appeals the determination of the Labor and Industrial Relations Commission (the commission) that Henry Ottendorf (claimant) was entitled to unemployment compensation; that claimant was not disqualified by reason of his misconduct. This court reverses and remands.

On October 2, 2000, claimant reported to employer's plant nurse. He told her he had injured his back at work Friday, September 29, 2000. Claimant said he had gone to a doctor over the weekend; that medication had been prescribed to treat his injury. The nurse sent claimant to a chiropractor for treatment.

Employer's substance abuse policy requires any injured worker who requires medical treatment to submit to alcohol and drug testing. Its written policy states:

## POST–ACCIDENT OR ON–THE–JOB INJURY DRUG TESTING

. . .

B. The Company will require the alcohol and drug testing of any employee whose on-the-job injury or illness warrants medical treatment at a medical facility. Employees that test positive for drugs or have a blood alcohol level of .05 or higher will be disci-

plined up to and including termination.

The plant nurse obtained a urine sample from claimant. Claimant told her he did not believe he would pass the test; that he had smoked marijuana that morning or the day before; that he smoked it often. The sample tested positive for marijuana use. A chemist testified that the test results were higher than would result from passive smoke inhalation; that the test results disclosed possible impairment from use of the drug. Claimant was discharged October 9, 2000, for violation of employer's substance abuse policy.

Claimant filed a claim for unemployment benefits. Employer protested the claim on the basis that the termination was for misconduct related to claimant's job. A deputy[1] reviewed the claim as required by § 288.070.2.[2] The deputy determined claimant's discharge was not related to misconduct connected to work; that claimant was discharged because he tested positive for use of an illegal drug. Employer appealed. An appeals tribunal found there was "no evidence of a positive drug screen at the time of the injury, and there is no objective evidence of impairment at the time of the drug screen."[3] It affirmed the deputy's determination.

Employer applied for review by the commission. See § 288.200.1. The commission affirmed the decision of the appeals tribunal and adopted its decision.

Employer contends the commission erred in holding that claimant's violation of its substance abuse policy did not constitute misconduct in connection with his work so that he would be disqualified from receiving unemployment compensation benefits. Employer argues the commission disregarded the underlying purpose of its drug abuse policy; that claimant knew of the policy. Employer asserts that claimant reporting for work October 2, 2000, with an excess level of illegal drugs in his system warranted his discharge for misconduct; that this was misconduct related to claimant's work.

■■■ The commission's findings of fact, if supported by competent and substantial evidence, in the absence of fraud, are conclusive on appeal. *Richardson v. Jama Sue, Inc.*, 972 S.W.2d 657 (Mo.App. 1998). However, questions of law are reviewed independently. *Miller v. Kansas City Station Corp.*, 996 S.W.2d 120, 122 (Mo.App.1999). "Whether or not the Commission's findings support the conclusion that an employee was guilty of misconduct is a question of law." *Id.* "This court is not bound by the Commission's conclusions of law or the Commission's application of law to the facts." *Id.*

■■■ When an employer seeks to defend a claim on the basis that a claimant was discharged for misconduct, the burden of proving the claim of misconduct was connected with work becomes the employer's. *Kennett Bd. of Public Works v. Shipman*, 15 S.W.3d 792, 795 (Mo.App.2000).

Section 288.050.2 imposes restrictions on a claimant's recovery if the claimant was discharged for misconduct connected with

---

1. A "deputy" is a representative of the Division of Employment Security whose duties include making investigations and administrative determinations on claims or matters of employer liability. *See* § 288.030.1(11), RSMo 2000.

2. References to statutes are to RSMo 2000.

3. An "appeals tribunal" is a "referee or a body consisting of three referees appointed to conduct hearings and make decisions on appeals from administrative determinations, petitions for reassessment, and claims referred pursuant to subsection 2 of section 288.070." § 288.030.1(1).

his or her work. The statute does not define what constitutes such misconduct. However, *City of Kansas City v. Arthur*, 998 S.W.2d 870 (Mo.App.1999), explains:

... [T]he term has been defined by Missouri courts to mean:

"an act of wanton or wilful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent, or evil design or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer."

*Id.* at 873, quoting *Sain v. Labor and Industrial Relations Com'n,* 564 S.W.2d 59, 62 (Mo.App.1978).[4]

Employer operates a poultry processing plant. Claimant worked in an area of employer's plant where a "live-hang line" was located. The line was a mechanized shackle system. It had a moving line with moving machinery.

Employer's human resources manager, Gerald Wayne Runkles, explained claimant's job. He testified claimant worked in employer's "live-hang department"; that he "hung live chickens." Mr. Runkles was asked what was involved in hanging a live chicken. He answered, "You—it comes into a dark room, you grab it by the feet, you turn it upside down and hang it into a stainless steel shackle which has two loops and the—the legs go into the loops." Mr. Runkles characterized the job as a complex task, one "that would take quite a bit of hand-eye coordination." He said the lines moved at approximately 140 shackles per minute; that "they're clipping along pretty good."

Employer's substance abuse policy was intended to insure a drug and alcohol-free work place and provide a safe and productive work environment for employees. Claimant signed a document entitled "Drug and Alcohol Abuse Policy and Consent Agreement" when he began working for employer. It was dated "10–25–99." It states:

I agree to abide by George's Processing drug and alcohol abuse policy. I understand that when I sign the consent form I can be subjected to drug testing procedures including but not limited to blood testing, urine testing, or breath analyzing for drugs and alcohol.

I understand and agree that, as a condition of employment, I may be required to take a urinalysis or other drug testing procedure as may be deemed necessary by the Company.

By my signature below, I agree to submit to these tests and further agree that the testing agency/laboratory is authorized by me to provide the results of the test to George's Processing or any subsidiary. Any refusal on my part to sign any part or parts of the Policy on Drug and Alcohol Abuse will be sufficient grounds for the Company to terminate my employment.

Use, possession, unlawful manufacturing, sale or solicitation of illegal drugs or alcohol on company premises, including parking lots, reporting to work with any detectable amount of illegal drugs or an alcohol level of .05 or higher in the bodily systems as determined by testing will be sufficient cause for immediate

4. The definition of "misconduct connected with the claimant's work" was originally taken from 48 Am.Jur. 541. *See Ritch v. Industrial Com'n,* 271 S.W.2d 791, 793 (Mo.App. 1954). The definition is now found at 76 Am.Jur.2d *Unemployment Compensation* § 77 (1992).

termination of employment. Employees terminated for above cause will not be eligible for medical, personal or rehabilitative leave programs.

I certify that I am free of illegal drugs, controlled substances or alcohol. I agree that I will remain free of illegal drugs, controlled substances and alcohol as a condition of my continued employment at George's Processing or its subsidiaries.

I have read, understand and have been given a copy of this Policy on Drug and Alcohol Abuse and agree to abide by its terms and conditions.

A test result of 15 nanograms per milliliter is required for a urine sample to test positive for marijuana. Eighty nanograms per milliliter indicate probable impairment. Claimant's specimen tested 342 nanograms per milliliter for the main urinary metabolite of marijuana.

The chemist who testified at claimant's hearing explained the danger associated with an employee's use of marijuana. She stated it was a scientific fact that marijuana impaired. She continued:

> It impairs the hand-eye coordination. It impairs depth perception. It impairs the ability to perform complex tasks. It affects short term memory. And all of these things could contribute to the individual not functioning in a normal rational manner or taking more risk than an individual would normally take or not having the response time that an individual should normally have.

Clearly, claimant reporting for work at a time subsequent to when he contends he was injured in an impaired condition as a result of marijuana use was in wanton and willful disregard of employer's rules. It was a disregard of standards of behavior that employer had the right to require of its employees. Claimant's drug-impaired condition threatened the efficient operation of employer's production. It threatened claimant's safety and the safety of other employees. The commission's conclusion that employee was not guilty of misconduct connected with his work was an erroneous application of law to the facts in this case. The facts found by the commission do not support the award.

Claimant committed misconduct in connection with his work when he reported for work October 2, 2000, in a marijuana-impaired condition. The decision of the commission is reversed. The case is remanded. The commission is directed to disqualify claimant from such waiting credit or benefit as it reasonably determines to be warranted by the facts of this case. The commission is further directed to determine whether to cancel all or part of any wage credits claimant may have established through claimant's employment by employer as permitted by § 288.050.2 and to enter a decision and award consistent with this opinion.

GARRISON, P.J., and RAHMEYER, J., concur.