**CITY OF BRANSON, Appellant,**

v.

**Mark SANTO and Division of Employment Security, Respondents.**

**No. 25281.**

Missouri Court of Appeals, Southern District, Division Two.

Aug. 18, 2003.

William C. Martucci, Kayden B. How-ard, Shook, Hardy & Bacon, L.L.P., Kansas City, for appellant.

Timothy D. Richardson, Springfield, for respondent, Mark Santo.

KENNETH W. SHRUM, Judge.

This is an unemployment compensation case in which the City of Branson ("City") appeals from an adverse decision and order of the Missouri Labor and Industrial Relations Commission ("Commission"). Commission had affirmed a decision of the Appeals Tribunal that granted Mark Santo ("Claimant") benefits after he was fired from employment with City as a police officer. In its single point, City claims Commission erred because the award of unemployment benefits was not supported by sufficient competent evidence, and the facts found by the Commission did not support the award. This court disagrees; we affirm.

Claimant, a police sergeant, had worked for City approximately 14 years when he was discharged on April 2, 2002. During his tenure, City had imposed four disciplinary actions upon Claimant: (1) a two-day suspension and six-month probation in May 1998; (2) a verbal warning in April 2000; (3) a written warning in October

2000; and (4) a two-day suspension for violations committed in June 2001. All of the foregoing resulted from Claimant's failure to follow police department rules and regulations.

On March 23, 2002, Claimant was called to work three hours after his scheduled starting time. Claimant insisted this happened due to a change of schedule that occurred in his absence.

While City's police chief, Steven Mefford ("Mefford") was "looking into" Claimant's tardy arrival at work, another issue arose, namely, a complaint by Carla Naegele ("Naegele"), a female dispatcher, that Claimant had sexually harassed her and created a "hostile work environment."

On March 26, 2002, Claimant met with Mefford and two other City officials concerning Naegele's complaints.[1] Upon being confronted with Naegele's accusations, Claimant generally denied them and offered to take a polygraph examination regarding her claims. The examination was given by John Harvill who concluded that Claimant was being deceptive in his answers regarding the harassment issues.

On April 2, 2002, Claimant again met with Mefford and other City officials to "discuss the results of the polygraph." At the meeting, Claimant insisted the polygraph operator's conclusions were wrong, that the test was "not handled correctly," and that he was telling the truth. Even so, Claimant was told he was being terminated for "a number ... of policy violations that included several items in addition to the Carla Naegele matter." A termination letter (dated April 2, 2002) recited the four older disciplinary actions, Claimant's tardiness of March 23, 2002, and the alleged deception regarding the sexual harassment allegations as reasons for discharging Claimant from his job with City.[2]

Thereon, Claimant filed for unemployment benefits. City promptly protested Claimant's request for benefits, asserting, *inter alia*, that Claimant "was terminated for numerous violations of City personnel code and Branson Police Dept. policies, including dishonesty." On April 22, 2002, a deputy of the Division of Employment Security ("Division") ruled Claimant was not entitled to benefits because he lost his job "for misconduct connected with work." Specifically, the deputy found Claimant followed "a female co-worker to her home after work. [Employee] was harassing the co-worker." No other work-related misconduct finding was made by the deputy.[3]

1. The record does not disclose that Claimant's tardiness on March 23, 2002, or his prior disciplinary problems, were brought up at the March 26 meeting.

2. The paragraphs that dealt with Naegele's charges against Claimant read as follows:

"On March 26, 2002, you were questioned regarding possible inappropriate behavior in connection with a complaint by Dispatcher Carla Naegele, including calling her at home and asking if you could come over, following Ms. Naegele while she drove home after work and driving past Ms. Naegele's apartment complex outside the City limits and while on duty in a police vehicle. You denied the above conduct ... and offered to take a polygraph test to prove your truthfulness.

"On March 28, 2002, a polygraph was administered by Mr. John Harvill. His professional opinion was that you were deceptive when answering no to the following questions: (1) Do you ever remember calling Carla [Naegele] and asking if you could come to her house after work? (2) have you ever knowingly and intentionally followed Carla on her way home from work? (3) Did you ever drive by Carla's residence in a Branson Police Car?

"Your actions as stated above, constitute grounds for termination."

3. Apparently City was concerned about the limited scope of the deputy's ruling because

Claimant appealed the deputy's decision to the appeals tribunal, and an evidentiary hearing was held August 13, 2002. At the hearing, the referee succinctly explained the issues to be, (1) why did City fire Claimant, (2) did the evidence support City's reason for termination, and (3) did Claimant's alleged actions amount to disqualifying conduct as a matter of law. After hearing the evidence, the referee rendered a decision that recited, *inter alia:*

> "FINDINGS OF FACT.... The claimant was discharged on April 2, 2002, because the employer had received a complaint of sexual harassment against the claimant lodged by a female coworker. The claimant had not in any manner sexually harassed the female coworker."

Based on this finding, the referee reversed the deputy's determination and awarded Employee unemployment benefits. City appealed to the Commission. After Commission affirmed the appeals tribunal, City filed its appeal with this court.

■ In its single claim of reversible error, City asserts:

> "The ... Commission erred in awarding benefits to [Claimant] ... because the facts found by the Commission do not support the award and there was not sufficient competent evidence to warrant ... the award in that [Claimant's] employment was terminated for multiple acts of misconduct, including failure to pay attention to posted directives or details, failure to report to work, using City vehicles for personal use, dishonesty in connection with internal matters, and additional violations of multiple City

and Police Department policies, all of which are grounds for disqualification under RSMo § 288.050.2."

To support its point, City argues the evidence clearly showed Employee was discharged for reasons other than sexual harassment; that the appeals tribunal was simply wrong when it found City had discharged Employee for that reason; and that Employee "was terminated for 12 other acts of misconduct, none of which were even addressed by [the appeals tribunal] in [its] decision."

■ A claimant is disqualified from receiving unemployment benefits if he or she is "discharged for misconduct connected with the claimant's work." § 288.050.2.[4] The burden of proving that an employee was discharged for misconduct falls upon the employer. *Baldor Elec. Co. v. Reasoner,* 66 S.W.3d 130, 133[5] (Mo.App.2001). Although "misconduct connected with work" is undefined by statute, case law defines it as:

> " '[A]n act of wanton or wilful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent, or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer.' "

*Sain v. Labor and Ind. Rel. Comm'n.,* 564 S.W.2d 59, 62 (Mo.App.1978) (quoting 76

---

City promptly contacted Division (apparently in an *ex parte* fashion) to complain that wrong reasons had been given for the deputy's decision; that Claimant was not fired for sexual harassment, but for *other rule violations.* Division answered by telling City it "could appeal the determination ... that is the only

way [it] could go back and say that that is not the correct reason." No appeal *by City* is found in the record.

4. All statutory references are to RSMo (2000), unless otherwise stated.

AM.JUR.2D *Unemployment Compensation* § 52 at 945).

▮ Whether the Commission's findings support the conclusion that an employee's actions rise to the level of disqualifying misconduct is a question of law. *George's Processing, Inc. v. Ottendorf,* 57 S.W.3d 923, 925[2] (Mo.App.2001). On the other hand, *the reason an employer discharged an employee is a question of fact. Reed v. City of Springfield,* 758 S.W.2d 138, 150 n. 11 (Mo.App.1988). We defer to the Commission's resolution of witness credibility, and where the Commission, as a trier of fact, has reached one of two possible conclusions from the evidence, this court will not reach a contrary conclusion even if such a conclusion might have reasonably been reached. *Heavy Duty Trux v. Labor and Indus. Relations Comm'n,* 880 S.W.2d 637, 640[3] (Mo.App. 1994).

There is in this record evidence that would reasonably support two possible conclusions about why City fired Claimant, i.e., the reasons set out in City's point relied on, or "because the employer had received a complaint of sexual harassment against the claimant[,]" as Commission found. Evidence and reasonable inferences that support Commission's conclusion include the following.

Naegele delivered her six-page, handwritten complaint regarding Claimant to her supervisor on March 23, 2002, alleging Claimant had sexually harassed her. After providing details to support her claims, Naegele concluded her document as follows: "What started out as sexual harassment towards me has now turned into a hostile work environment."

Coincidentally, the date Naegele delivered her complaint letter to her supervisor (March 23, 2002) was also the day Claimant was three hours late for work. The record shows Mefford knew about the "tardy arrival" problem before being told on March 25 of Naegele's complaint, but had not decided if that incident warranted discipline. This follows because Mefford was asked at the appeals tribunal hearing if Claimant's tardiness on March 23, 2002, would have led to his dismissal had the polygraph results shown non-deceptive answers, and he answered: "I don't know." That answer is consistent with Mefford's testimony that he was still "looking into" the tardiness incident on March 25, 2002, but immediately started an investigation into Naegele's complaints when they were made known to him. Moreover, Naegele's letter was the only topic of discussion at the meetings held with Claimant on March 26 and April 2, 2002. In addition, Mefford stated that the Naegele issue "was far more serious tha[n] the being late issue." From these facts, it is reasonably inferable that City viewed Claimant's recent tardiness and past conduct as relatively insignificant compared to Naegele's allegations.

It is true that City's termination letter to Claimant did not use the phrase "sexual harassment" to describe Naegele's complaints about Claimant. *See* n. 2. Naegele's letter, however, provided ample evidence that Naegele did charge Claimant with sexual harassment and that such allegations were part of the "inappropriate behavior" to which City referred in its termination letter.

It is equally true that City used language in the termination letter suggesting it fired Claimant because of his alleged dishonesty in responding to Naegele's allegations of harassment. City used similar language in its protest letter to Division, and it has since insisted that Claimant's deceptiveness was one reason it fired Claimant. This is nothing more than semantics, however, and a futile effort to argue a distinction when there is no difference. Commission found Claimant had not

sexually harassed Naegele and City has left that finding unchallenged. The essence of that unchallenged factual finding is that Claimant answered honestly when he denied sexual harassment of Naegele. Under the circumstances, City's assertion that the Commission erred in failing to find Claimant was fired for dishonesty, i.e., deception in answering Naegele's allegations, is disingenuous.

In sum, Commission was entitled to disbelieve City's claims that it fired Claimant for "dishonesty," or being late, or past infractions, or some combination thereof. *Reed*, 758 S.W.2d at 150 n. 11. Commission's finding that City fired Claimant because of Naegele's complaints of sexual harassment is supported by competent and substantial evidence, and there being no fraud shown, that finding is conclusive on appeal. *Ottendorf*, 57 S.W.3d at 925[1]. Point denied.

Affirmed.

PARRISH, J., and RAHMEYER, C.J., concur.